[Civ. No. 15980. Fourth Dist., Div. Two. June 20, 1977.]

T. EDWARD BEEHAN et al., Plaintiffs and Appellants, v.
LIDO ISLE COMMUNITY ASSOCIATION,
Defendant and Respondent.

**COUNSEL**

Joslyn, Roeth, Angerhofer, Olds & Condon and Daniel B. Condon for Plaintiffs and Appellants.

Rutan & Tucker and Robert C. Braun for Defendant and Respondent.

**OPINION**

**KAUFMAN, J—**—T. Edward Beehan and Claire E. Beehan (hereinafter plaintiffs) appeal from a judgment in favor of defendant Lido Isle Community Association (hereinafter Association) denying plaintiffs' claim for reimbursement for attorney fees and costs incurred in obtaining a stipulated judgment against Robert P. and Loring P. Warmington (hereinafter Warmingtons).

██ Findings of fact and conclusions of law were waived by plaintiffs' failure to request them. (Code Civ. Proc., § 632.) Accordingly, we presume in support of the judgment each favorable finding of fact supported by the evidence. (*Stewart* v. *Langer,* 9 Cal.App.2d 60, 61 [48 P.2d 758].)

Plaintiffs and the Warmingtons own property situated diagonally across a street from each other on Lido Isle in Newport Beach. The property on Lido Isle is subject to a declaration of protective restrictions executed and recorded in 1928. Association is a nonprofit corporation which was also organized in 1928. The activities in which it is permitted to engage are set forth in the "Purposes Clause" of its articles of incorporation. One of the enumerated purposes is the enforcement of the declaration of protective restrictions.

In November 1973, the Warmingtons submitted architectural plans to Association for approval. Association's architectural committee reviewed the plans to determine whether there were any setback restrictions and in so doing relied on a booklet entitled "The Declaration of Restrictions" which contained the original restrictions and modifications thereto. The booklet indicated a four-foot setback requirement. Warmingtons' plans complied. Association therefore approved the plans as submitted. The same plans were approved by the City of Newport Beach and a building permit was issued in December 1973.

Construction of the Warmingtons' house commenced in January 1974. In February, plaintiffs contacted Mr. William Sprague, Association's administrator, for the purpose of ascertaining whether the Warmingtons' structure violated a setback provision in the declaration of restrictions. Mr. Sprague inspected the building site but could not determine whether the construction violated setback requirements. He requested the City of Newport Beach to inspect the premises; the city did so and found that the construction did not breach the restrictions.

On February 25, plaintiffs visited Association's offices to review the declaration of restrictions and Association's minute book. The declaration indicated only a four-foot setback requirement on the Warmingtons' property. From the minute book, however, plaintiffs found copies of minutes from meetings held in 1953 and 1954 which indicated that Association's board of directors adopted a resolution amending the setback requirement on the Warmingtons' property and some surrounding property from four feet to six feet. A copy of the amendment had been recorded February 25, 1954. Plaintiffs informed Mr. Sprague of their discovery.

In a continuation of his investigation, Mr. Sprague reviewed the minutes and also reviewed the 1928 declaration of restrictions. This declaration specifies certain procedures that must be followed in order to adopt a valid modification of the restrictions. First, there must be a public hearing. *After* such hearing, written consent of Association must be given. Finally, written consent must be obtained from more than one-half of the owners of the property within 500 feet of the outer boundaries of the lot or lots on which the restrictions are to be changed.

Mr. Sprague reviewed the minutes and other records of Association to determine the validity of the 1953 modification. The March 11, 1953, minutes state that a public hearing was held on March 14, 1953, three

days *after* the minutes were dated and one month *after* approval was given by Association's board of directors. Since the declaration required the public hearing to be held *before* Association's approval, this procedure was in conflict with the modification requirements. Moreover, Mr. Sprague could find no evidence that written consent had been obtained from the necessary property owners. He therefore notified members of Association's board of directors that his examination cast substantial doubt upon the validity of the 1953 amendment.

Prior to the next board meeting, Mr. Sprague photocopied minutes of the 1953 meetings, the resolution adopted at that time, minutes of the 1954 meeting that referred to the purported modification and copies of his memorandum detailing the lack of proof that such modification was validly adopted. He included these in an agenda packet which was distributed to all board members before the meeting. Several board members also visited the construction site before the meeting.

On March 13, the board, on the first of several occasions, considered the problem. Plaintiffs and their attorney appeared and made a presentation supporting their position that a six-foot setback was applicable. The Warmingtons also appeared and presented evidence supporting their contention that a four-foot setback was proper. The meeting was open to all members of Association. An attorney and former members of the board of directors, Mr. Mel Richly, after reviewing the adoption procedure of the alleged 1953 modification, expressed his opinion to the board that the modification was invalid and unenforceable.

A special meeting of the board of directors was held on March 16 for the sole purpose of reviewing the setback matter. In attendance were members of Association's architectural committee, members of the board, plaintiffs, plaintiffs' attorney, the Warmingtons and Mr. Sprague. Each side reiterated its respective position. Another discussion ensued regarding the validity and enforceability of the purported amendment. Nevertheless, the problem was not resolved.

On April 17, the next regularly scheduled board meeting was held. After an extensive discussion, the board decided to forgo seeking an injunction against the Warmingtons for violating the alleged 1953 modification of the declaration of restrictions. On April 18, Mr. Sprague informed plaintiffs' attorney of Association's decision not to proceed against the Warmingtons.

Having filed suit on or about April 1, on May 7 plaintiffs obtained a preliminary injunction restraining the Warmingtons from proceeding further with the construction of their house. Association's board of directors held a meeting the following day to again discuss this dispute. Both plaintiffs and the Warmingtons stated their respective positions. After a lengthy period of deliberation, the chairman of the board suggested a compromise whereby the setback on the Warmingtons' property would be changed to five feet. This proposal was acceptable to the Warmingtons but not to plaintiffs.

Plaintiffs filed their first amended complaint on May 28, 1974. The first count was directed against the Warmingtons and sought a mandatory injunction requiring them to modify the home they were constructing to conform to the alleged six-foot setback requirement. The second count was directed against Association and sought reimbursement for plaintiffs' fees and costs incurred in the action against the Warmingtons.

In March 1975, plaintiffs and Warmingtons entered into a stipulation for judgment whereby the Warmingtons agreed to modify their house so that it was set back six feet. Association was not a party to this stipulation. Plaintiffs then proceeded to trial against Association. The case was tried on the second count of plaintiffs' first amended complaint only and the sole problem confronting the trial court was whether plaintiffs were entitled to reimbursement for costs[1] and attorneys' fees incurred in obtaining judgment against the Warmingtons.[2]

Plaintiffs are vague as to their theory of recovery. Although they speak in terms of negligence and implied indemnity, these theories would not support an award of attorney fees and costs against Association. In the absence of an express or implied agreement (Code Civ. Proc., § 1021), the only theory of which we are aware under which plaintiffs might recover attorney fees and costs from Association is the substantial benefit rule, a variant of the common fund doctrine under which attorney fees are frequently allowed in shareholder derivative actions. (See *Fletcher* v. *A. J. Industries, Inc.,* 266 Cal.App.2d 313, 320 [72 Cal.Rptr. 146], and authorities there cited.) Perhaps this was the theory plaintiffs had in mind, for they attempted to prove each of the conditions necessary to

---

[1] Plaintiffs did not recover costs against the Warmingtons because the stipulation for judgment provided that the parties were to bear their own costs.

[2] The procedure followed by plaintiffs was not challenged. By recounting it, we do not express our approval of it.

recovery on that theory, to wit: (1) defendant Association is a corporation; (2) plaintiffs are shareholders or members; (3) Association refused to act after a proper demand upon it; (4) such refusal constituted an abuse of managerial discretion; (5) plaintiffs successfully proceeded with the suit; and (6) by doing so plaintiffs rendered a substantial benefit to Association. (Cf. Corp. Code, § 800; *Fletcher* v. *A. J. Industries, Inc.,* *supra,* 266 Cal.App.2d at pp. 318-319.)

The trial court impliedly found that in refusing to take action against the Warmingtons, Association's board of directors did not abuse their managerial discretion.[3] This finding of the trial court is supported by substantial evidence and is, therefore, decisive. (Cf. *Fletcher* v. *A. J. Industries, Inc., supra,* 266 Cal.App.2d at p. 325.)

Preliminarily, Association asserts that it was under no obligation to take action against the Warmingtons. Plaintiffs point to the express enumeration in Association's articles of incorporation that one of its purposes is the enforcement of the declaration of protective restrictions. Association asserts that the enumeration of purposes in its articles of incorporation empowers it to act but does not oblige it to do so. We need not resolve this question. For purposes of this decision we shall assume Association was obligated in appropriate circumstances to take action to enforce the declaration of restrictions.

■ Nevertheless, neither a court nor minority shareholders can substitute their business judgment for that of a corporation where its board of directors has acted in good faith and with a view to the best interests of the corporation and all its shareholders. (*Marsili* v. *Pacific Gas & Elec. Co.,* 51 Cal.App.3d 313, 324 [124 Cal.Rptr. 313]; *Fairchild* v. *Bank of America,* 192 Cal.App.2d 252, 256-257 [13 Cal.Rptr. 491]; *Findley* v. *Garrett,* 109 Cal.App.2d 166, 174-175 [240 P.2d 421].) "The power to manage the affairs of a corporation is vested in the board of directors. [Citation omitted.] Where a board of directors, in refusing to commence an action to redress an alleged wrong against a corporation, acts in good faith within the scope of its discretionary power and reasonably believes its refusal to commence the action is good business judgment in the best interest of the corporation, a stockholder is not authorized to interfere with such discretion by commencing the action. . . . 'Every presumption is in favor of the good faith of the directors. Interference with such discretion is not warranted in doubtful cases.' "

---

[3]Not only is this finding presumed, in its notice of intended decision, the court expressly so found.

(*Findley* v. *Garrett, supra,* 109 Cal.App.2d at p. 174; accord: *Fornaseri* v. *Cosmosart Realty & Bldg. Corp.,* 96 Cal.App. 549, 557 [274 P. 597].)

■ The refusal of Association's board of directors to seek injunctive relief against the Warmingtons must be judged in light of the facts at the time the board considered the matter. There would be difficulty in proving the 1953 setback amendment was validly enacted. The minutes indicated public hearing was held after Association's approval rather than before, and it could not be established that written consent had been obtained from the required number of property owners. Eighteen of the twenty one homes in the area affected by the alleged 1953 amendment were in violation of the six-foot setback requirement, thus making it doubtful whether Association could prevail in an injunctive action against the Warmingtons. Association's funds were committed, in large part, to pay for services which benefited the entire community, such as beach and clubhouse maintenance, lifeguards, gardeners and administrative staff. Apparently, the board believed that the utility of incurring substantial attorney fees in prosecuting a lawsuit of questionable merit was outweighed by the possible curtailment of normal services.

The fact that the board refused to bring suit even after a preliminary injunction was issued is not decisive. ■ It has been said that a court will deny a preliminary injunction unless there is a reasonable probability that the plaintiff will be successful on the merits, but the granting of a preliminary injunction does not amount to an adjudication of the merits. (*Continental Baking Co.* v. *Katz,* 68 Cal.2d 512, 528 [67 Cal.Rptr. 761, 439 P.2d 889].) The function of a preliminary injunction is the preservation of the status quo until a final determination of the merits. (*Id.*) ■ Moreover, "[t]he mere fact that a recovery for the corporation would probably result from litigation does not require that an action be commenced to enforce the claim. Even if it appeared to the directors . . . that at the end of protracted litigation substantial sums could be recovered from some or all of the defendants, that fact alone would not have made it the duty of the directors to authorize the commencement of an action. It would have made it their duty to weigh the advantages of a probable recovery against the cost in money, time and disruption of the business of the company which litigation would entail. . . . ■ A mistake of judgment on the part of a board of directors does not justify taking the control of corporate affairs from the board of directors and placing it with the stockholders. The board of directors may make incorrect decisions, as well as correct ones, so long as it is faithful to the

corporation and uses its best business judgment." (*Findley* v. *Garrett, supra,* 109 Cal.App.2d at pp. 177-178.)

█ From the foregoing discussion, it is manifest that the court's finding that Association's board of directors did not abuse its managerial discretion is supported by substantial evidence. That determination makes unnecessary our consideration of Association's further claim that plaintiffs' suit conferred no substantial benefit on the Association.

Association contends that plaintiffs' appeal is frivolous and that we should therefore impose sanctions against them. Although we have not found the appeal meritorious, we cannot say it was wholly insubstantial or not taken in good faith. Accordingly, we do not classify the appeal as frivolous.

The judgment is affirmed. In the interest of justice, neither party shall recover costs.

Tamura, Acting P. J., and Morris, J., concurred.