[No. G006681. Fourth Dist., Div. Three. Aug. 31, 1989.]

TED WILL, Plaintiff and Appellant, v.
ENGEBRETSON & COMPANY, INC., et al., Defendants and
Respondents.

COUNSEL

Copenbarger & Associates, Paul D. Copenbarger, Jaime D. Banfield and Patricia J. Rozakis for Plaintiff and Appellant.

C. D. Daly, Saltarelli & Steponovich, Steponovich & Long and Michael J. Steponovich, Jr., for Defendants and Respondents.

OPINION

SCOVILLE, P. J.—The superior court dismissed plaintiff's shareholder derivative action under the "business judgment rule" after a compensation committee appointed by the corporation's board of directors determined that it was in the best interests of the corporation to terminate the lawsuit. (See *Gaines* v. *Haughton* (9th Cir. 1981) 645 F.2d 761; *Lewis* v. *Anderson* (9th Cir. 1979) 615 F.2d 778.) In finding that the action should be dismissed, the trial court treated defendant's motion for summary judgment

(Code Civ. Proc., § 437c) as a "hybrid dismissal motion" and conducted a limited review on the merits. Because we conclude the court exceeded its function of merely determining whether issues of fact exist, the judgment is reversed.

I

Plaintiff Ted Will (Will) is the minority shareholder (20 percent) of Engebretson & Company (Company), a closely held financial management corporation.[1] Lester Engebretson (Engebretson) is the majority shareholder (80 percent) of Company. For many years, Will, Engebretson, and Engebretson's wife, Dorothy, were the directors of Company. At the time this action arose, the board of directors consisted of Engebretson, Will and John Quirk, Dorothy Engebretson's brother.

In October 1986 Will filed a shareholder derivative action against Company and the Engebretsons. He alleged the Engebretsons had breached their fiduciary duty as directors by receiving excessive and unreasonable amounts from Company in the form of salaries, dividends and/or deferred compensation in excess of $4 million, and by failing to issue any dividends to minority shareholders. The complaint sought an accounting and the imposition of a constructive trust on the Engebretsons' property. Will alleged that if the action were successful a substantial benefit would result to Company.

On January 14, 1987, Company's board of directors formed a "compensation committee" composed of three directors: Quirk, and two directors who were appointed to their posts in December 1986, Harold Brown and Allen Klosowski. According to their declarations, the committee's task was to review the history of Engebretson's compensation, establish an appropriate compensation package for the president of Company, evaluate the allegations of Will's derivative action, and determine whether the continuation of the lawsuit was in the best interests of Company. The committee retained the accounting firm of Peat, Marwick, Mitchell & Co. to provide an analysis of Engebretson's salary, and counsel for Company served as counsel for the committee.

On February 17, 1987, Company filed an answer denying the allegations of the complaint and alleging as an affirmative defense that Will had failed to allege facts sufficient to show the derivative action was in the best interests of Company. It also filed a cross-complaint against Will for abuse of process, negligence, and breach of fiduciary duty. Company alleged Will filed the derivative action for the sole purpose of "harassing Engebretson

---

[1] The present name of Company is Engebretson Capital Management, Inc.

and forcing Engebretson to purchase Will's stock at a price far exceeding its value and not for the purpose of benefiting the corporation."

On March 2, 1987, the compensation committee met with corporate counsel by telephone conference call. After reviewing the two-page analysis of Engebretson's salary and compensation prepared by Peat, Marwick, the committee determined that the continuation of Will's action was not in the best interests of Company and recommended that the board of directors ask Will to voluntarily abandon the lawsuit. The committee recommendation was adopted by the board of directors two days later at a regularly scheduled board meeting. Will, however, refused to dismiss the derivative suit.

In June 1987 Company moved for summary judgment as to the derivative action. Company contended that a disinterested compensation committee appointed by the board of directors had determined that maintenance of the action was not in the best interests of Company, and that under the business judgment rule the committee's good faith decision to dismiss the shareholder's derivative action is immune from judicial attack. It argued that the court was required, as a matter of law, to dismiss the action.

Will opposed the motion arguing that the compensation committee was not disinterested, that the decision was not made in good faith, and that the business judgment rule should not apply to closely held corporations. He submitted evidence the "disinterested" directors were relatives of the Engebretsons or business clients with substantial financial interests managed by Engebretson. He also submitted evidence showing that the compensation committee failed to make an independent review of the matter. He asserted that none of the members reviewed the complaint or the financial records of the corporation, and that under the board resolution creating the compensation committee they were not even charged with evaluating whether it was in the best interests of Company to terminate Will's action. Will contended the committee was asked solely to review Engebretson's compensation package and that they did nothing more than ratify the advice of Engebretson's attorney, which was to recommend to the board of directors that the action be terminated.

At the August hearing on the summary judgment motion, the court noted that there were triable issues of fact "as to the adequacy of the investigation, as to the good faith and the independence of the committee." A discussion ensued, however, as to whether the normal summary judgment rules applied in a motion to terminate a shareholder's derivative action brought under the business judgment rule. Will asserted the court was required to determine whether there were triable issues of fact as to the formation, composition, independence, and good faith of the compensation

committee, and that if such issues of fact existed the motion must be denied. He pointed out the business judgment rule only applied to the decision of the committee and not to questions concerning the formation, independence and good faith of the committee. Company and Engebretson argued, on the other hand, the court was required to conduct an "evidentiary weighing" of the evidence and urged the court to hold a limited hearing on the merits. The motion was taken under submission.

In September 1987 the court issued a "Statement of Interim Ruling." In that ruling, the court concluded that the business judgment rule applied to derivative actions. Further, it determined that while the substantive aspect of the decision to terminate the derivative action was beyond judicial inquiry, the court was required to inquire as to the good faith of the committee's decision. A "good faith hearing," to be held after discovery had taken place, would examine the independence of the committee's members and the adequacy of their investigative procedures. The court felt that any such good faith hearing would necessarily involve a limited review of the merits and that such review is ordinarily inappropriate on a motion for summary judgment. However, believing that the better-reasoned decisions viewed the summary judgment motion in these types of cases as a "hybrid dismissal" motion, the court announced it would conduct a limited review on the merits at a "good faith" hearing.

Following several hearings during which the merits of the derivative action were reviewed, the court ruled that the compensation committee acted with "disinterested independence" and that its decision was made in good faith. Based on these factual findings, the court dismissed the derivative complaint, severed it from the pending cross-complaints, and then entered judgment against Will on the complaint. Will appeals.

## II

Our initial concern, that the derivative action was severed from the other issues in order to make a nonappealable order appealable, was based, in part, on a comment made at the "good faith" hearing by Company's counsel. He stated, " . . . I think that the—whatever issues exist on those, can be severed. And, frankly, the only way this is going to receive appellate review, is if your Honor does that. Otherwise, we [sic] this case will linger on, on those other issues, unless we dismiss them voluntary [sic]."

We asked the parties to brief the appealability of the judgment because it is clear that a court may not sever a complaint from a cross-complaint which remains to be tried merely to permit a plaintiff to immediately appeal the order dismissing the complaint. (Cf. *Armstrong Petroleum Corp.* v.

*Superior Court* (1981) 114 Cal.App.3d 732, 736-737 [170 Cal.Rptr. 767].) However, after reviewing the supplemental briefs, we have concluded that the judgment is appealable.

When the dismissal of an action operates to remove a defendant from the case and to leave no issue remaining between the plaintiff and the defendant, the order is appealable as a final judgment. (*Kuperman* v. *Great Republic Life Insurance Co.* (1987) 195 Cal.App.3d 943, 946-947 [241 Cal.Rptr. 187]; Code Civ. Proc., § 904.1.) That is what occurred here. The underlying derivative action was filed against Company and the Engebretsons. Although filed in Will's name, the suit seeks to enforce a cause of action the Company has against the Engebretsons for injuries Will alleges it suffered as a result of the acts of the Engebretsons. Thus, although Company is a defendant in the suit, it is nevertheless the real plaintiff and it alone will benefit from any judgment. (*Jones* v. *H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 106 [81 Cal.Rptr. 592, 460 P.2d 464].) The action is the only lawsuit between the Engebretsons and Company, and the only suit in which Company's rights can be litigated as against the Engebretsons. While the Engebretsons are parties to the lawsuit as a whole, dismissal of the derivative action served to resolve all issues between them and Company. Thus, the judgment is, under *Kuperman,* appealable.

## III

Relying on *Zapata Corp.* v. *Maldonado* (Del. 1981) 430 A.2d 779 [22 A.L.R.4th 1190], Will contends the motion for summary judgment should have been denied because the failure to allow judicial scrutiny of the substantive decisions of "special litigation committees" (such as the compensation committee here) will mean the death of the derivative suit, especially in close corporations.[2] We need not address that issue, however, because the judgment must be reversed on procedural grounds.

The motion for summary judgment was brought pursuant to Code of Civil Procedure section 437c. That section provides that the motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) ■ The function of the trial court in ruling on a summary judgment motion is "merely to determine whether such issues of fact exist, and not to

---

[2] We note in passing that Company disputes it is a close corporation. (See Corp. Code, § 158.) However, the issue would seem to be immaterial. Will's argument that the corporate power to terminate derivative litigation through the appointment of a special committee does not apply to close corporations has been rejected by an appellate court in at least one state. (*Black* v. *NuAire, Inc.* (Minn. 1988) 426 N.W.2d 203, 211.)

decide the merits of the issues themselves." *(Gaillard* v. *Natomas Co.* (1989) 208 Cal.App.3d 1250, 1268 [256 Cal.Rptr. 702]; see also *Kessler* v. *General Cable Corp.* (1979) 92 Cal.App.3d 531, 536 [155 Cal.Rptr. 94].) If the court finds a triable issue of material fact, the motion must be denied.

■ Here, the court stated in its interim ruling that if it were bound by the normal summary judgment rules, the motion would likely be denied because "there would almost certainly be at least the inference of a triable issue." It found, however, that the normal rules governing summary judgment motions should not apply. Relying on two out-of-state cases *(Kaplan* v. *Wyatt* (Del.Ch. 1984) 484 A.2d 501 and *Rosen* v. *Bernard* (1985) 108 App.Div.2d 906 [485 N.Y.S.2d 791]), the court concluded that the "termination motion must be deemed to be a hybrid dismissal motion, based upon the court's inherent power to supervise derivative litigation, and upon statutory authority to enforce a settlement (CCP § 664.6), to weigh the merits of whether the termination decision is in good faith." We disagree.

■ The business judgment rule, which forms the framework for this appeal, is "premised on the notion that those to whom the management of the corporation has been entrusted, and not the courts, are best able to judge whether a particular act or transaction is one which is ' ". . . helpful to the conduct of corporate affairs or expedient for the attainment of corporate purposes . . . ," ' and establishes a presumption that directors' decisions are based on sound business judgment."[3] *(Gaillard* v. *Natomas Co., supra,* 208 Cal.App.3d at p. 1263; see also *Eldridge* v. *Tymshare, Inc.* (1986) 186 Cal.App.3d 767, 776 [230 Cal.Rptr. 815].) In short, "neither a court nor minority shareholders can substitute their business judgment for that of a corporation where its board of directors has acted in good faith and with a view to the best interests of the corporation and all its shareholders. [Citations.]" *(Beehan* v. *Lido Isle Community Assn.* (1977) 70 Cal.App.3d 858, 865 [137 Cal.Rptr. 528]; see also *Findley* v. *Garrett* (1952) 109 Cal.App.2d 166, 174 [240 P.2d 421].)

■■■ The business judgment rule has been held, among other things, to permit a corporation to appoint a special litigation committee to decide whether the maintenance of a shareholder's derivative suit is in the corporation's best interests. *(Lewis* v. *Anderson, supra,* 615 F.2d at p. 783 [federal court applying California law].)[4] The committee may decide that

---

[3] The business judgment rule is codified in Corporations Code section 309. Corporations Code section 311 provides that the board of directors may delegate certain corporate power and authority to committees appointed by the board.

[4] Whether and under what circumstances a corporation's board of directors may appoint a committee to determine whether the maintenance of a derivative suit is in the best interests of

the suit should be dismissed and, if it does, the corporation may make a motion in the trial court to dismiss the suit. It may demur, move for judgment on the pleadings, or seek summary judgment.

In most cases, the corporation will file a motion for summary judgment. But such a procedure has its problems. As *Zapata* lamented, the "motion finds no ready pigeonhole" and is "perhaps best considered as a hybrid summary judgment motion for dismissal because the stockholder plaintiff's standing to maintain the suit has been lost." (*Zapata Corp.* v. *Maldonado, supra,* 430 A.2d at p. 787.) We therefore sympathize with the trial court's obvious difficulty in trying to apply the proper procedure to a motion which, because of its nature, does not fit easily into any one of the normal categories.

■ However, courts which have considered the issue have concluded that judicial review of the independence, good faith, and investigative techniques of a special litigation committee is governed by traditional summary judgment standards. In the leading case of *Auerbach* v. *Bennett* (1979) 47 N.Y.2d 619 [419 N.Y.S.2d 920, 393 N.E.2d 994], a shareholder of General Telephone & Electronics Corporation filed a derivative action alleging that corporate management had made questionable payments to public officials or political parties in foreign countries. (393 N.E.2d at p. 997.) A special litigation committee appointed by the board recommended that the action be dismissed and the corporation moved for summary judgment. After noting that the courts are "better qualified" by "long and continuing experience and practice" to determine the adequacy of the committee's formation and investigative techniques, it held that the plaintiff who opposes a summary judgment motion on these issues must show "facts sufficient to require a trial of any material issue of fact." (*Id.* at pp. 1002-1003.) Finding nothing in the record raising a triable issue of fact, it held the motion should have been granted.

Courts have generally followed *Auerbach.* In *Lewis,* the Ninth Circuit stated that inquiry as to the "disinterested independence" of the special litigation committee would be made by the court at trial. (*Lewis* v. *Anderson, supra,* 615 F.2d at p. 783.) Similarly, in *Gaines,* the same court affirmed the dismissal of a derivative suit because the plaintiff "has not raised a triable issue of fact" as to the independence and investigatory techniques of the special litigation committee. (*Gaines* v. *Haughton, supra,* 645 F.2d at p. 772.) Indeed, the "role of a court in this situation is limited to determining the disinterested independence of the committee members and the

the corporation is a matter of state law. (*Burks* v. *Lasker* (1979) 441 U.S. 471 [60 L.Ed.2d 404, 99 S.Ct. 1831].)

appropriateness and sufficiency of the investigative procedures chosen and pursued by the committee." (*Id*. at p. 771; see also *Hasan* v. *CleveTrust Realty Investors* (6th Cir. 1984) 729 F.2d 372, 379-380; *Rosengarten* v. *Buckley* (D.C.Md. 1985) 613 F.Supp. 1493, 1495; *Holmstrom* v. *Coastal Industries, Inc.* (N.D.Ohio 1984) 645 F.Supp. 963, 987; *Zapata Corp.* v. *Maldonado, supra,* 430 A.2d at p. 788.)[5] Clearly, the weight of authority holds that in this situation normal summary judgment rules are to be applied.

To the extent the trial court relied on *Kaplan* v. *Wyatt, supra,* 484 A.2d 501, and *Rosen* v. *Bernard, supra,* 485 N.Y.S.2d 791, as a minority but "better-reasoned" view, we are unpersuaded. *Kaplan,* a Delaware trial court decision, merely echoes the concerns raised by the Delaware Supreme Court in *Zapata,* that is, the summary judgment motion is a "technically inappropriate procedural vehicle" to test the decision of the committee. (*Kaplan* v. *Wyatt, supra,* 484 A.2d at p. 512, starred fn.) The trial judge did not, however, refuse to follow the normal summary judgment standards. He simply warned the reader of the problem and then proceeded to apply the appropriate rules. (*Id*. at p. 519.) In any event, the opinion carries little weight since the case was taken up to the state supreme court (see *Kaplan* v. *Wyatt* (Del. 1985) 499 A.2d 1184), and that court did not overturn or modify its prior holding (*Zapata Corp.* v. *Maldonado, supra,* 430 A.2d 779) on this point.

*Rosen* is likewise unavailing. Although the opinion states that "a limited issue hearing addressed solely to the independence of the members of the special litigation committee and the thoroughness of their investigation would determine these issues and possibly preclude the need for a trial on the merits" (*Rosen* v. *Bernard, supra,* 485 N.Y.S.2d at p. 792), it is clear from a close reading of the opinion that this was simply the ground on which the corporation made its motion to dismiss. It was not, as apparently the trial court believed, the holding of the case. To the contrary, the court ordered a hearing on the issues of the committee's independence and its investigative techniques pursuant to rule 3211, subd. (c), of the Civil Practice Law and Rules, which is little more than a summary judgment hearing. (*Id*. at p. 793.)[6]

---

[5] The Delaware Supreme Court set up a two-step approach in *Zapata Corp.* v. *Maldonado, supra,* 430 A.2d 779: after the court reviews the independence, good faith, and investigative technique of the committee, the court is required to exercise its independent business judgment in deciding whether to dismiss the derivative suit. Because we do not reach this part of the judicial process, nothing in this opinion should be construed as either approving or disapproving the *Zapata* procedure.

[6] Subdivision (c) of rule 3211 of the New York Civil Practice Law and Rules (West 1988) provides: "Upon the hearing of a motion made under subdivision (a) [a motion to dismiss similar to California Code of Civil Procedure section 430.10] or (b) [a motion to dismiss

Moreover, there are three reasons why Will is entitled to a trial on the merits as opposed to a "limited review" of the merits regarding the issue of the good faith and independence of the committee. First, the motion was made pursuant to the summary judgment statute. (Code Civ. Proc., § 437c.) That section clearly provides that the sole function of the trial court is to determine if there is a triable issue of fact. Having chosen that procedural avenue, Company and the Engebretsons are bound to follow it in all its particulars. If that procedure is inadequate for the termination motion made here, it is up to the Legislature, not the courts, to fashion a better rule.

Second, the court is uniquely equipped to judge the independence and fact-gathering techniques of the special litigation committee. As the Maine Supreme Court expressed it, "The policy reasons for keeping a court from evaluating after the fact the wisdom of a particular business decision do not apply when the issue is whether a party to that decision acted fraudulently or in bad faith. The assessment of fraud or bad faith is a function courts are accustomed to perform, and in performing it the courts do not intrude upon the process of business decisionmaking beyond assuring that those decisions are not improperly motivated." (*Rosenthal* v. *Rosenthal* (Me. 1988) 543 A.2d 348, 353; see also *Auerbach* v. *Bennett, supra,* 393 N.E.2d at p. 1002.) By conducting only a limited review of the merits on the theory the court should give deference to the business judgment of the committee, the court, in effect, lets the committee determine its own independence and good faith. But the business judgment rule was not designed to insulate actions of the committee committed in bad faith, and thus the committee should not receive the benefit of the presumption when the court seeks to judge the committee's independence and good faith.

Third, a limited review of the merits will tend to hide the structural bias of the special litigation committee. It has been well documented that a " '. . . derivative action invokes a response of group loyalty, so that even a "maverick" director may feel compelled to close ranks and protect his fellows from the attack of the "strike suiter." As a result, an outside director independent enough to oppose a chief executive officer with respect to a proposed transaction he thinks is unfair or unwise may still be unable to tell the same officer that he thinks the suit against him has sufficient merit to proceed . . . .' " (*Hasan* v. *CleveTrust Realty Investors, supra,* 729 F.2d at p. 377; see also *Joy* v. *North* (2d Cir. 1982) 692 F.2d 880, 888.) This inherent

defense similar to California Code of Civil Procedure section 430.20], either party may submit any evidence that could properly be considered on a motion for summary judgment. Whether or not issue has been joined, the court, after adequate notice to the parties, may treat the motion as a motion for summary judgment. The court may, when appropriate for the expeditious disposition of the controversy, order immediate trial of the issues raised on the motion."

structural bias requires the court to be "mindful of the need to scrutinize carefully the mechanism by which directors delegate to a minority committee the business judgment authority to terminate derivative litigation, particularly when the lawsuit is directed against some or a majority of the directors." (*Gaines* v. *Haughton, supra,* 645 F.2d at p. 772; fn. omitted.) Absent a full hearing or trial on these issues, the derivative plaintiff may lose the one opportunity to contest the decision of the board.

By thrusting itself into the shoes of the trier of fact, the trial court here exceeded its function under the summary judgment statute.

Will submitted evidence that the "disinterested shareholders" were more than disinterested in the legal sense: they were totally disinterested in the merits of the derivative action and simply followed the advice of corporate counsel who, according to Will, was working on behalf of Engebretson. Will submitted evidence that the special litigation committee was not charged with deciding whether to terminate the derivative action and that the committee members never reviewed the complaint, the financial records of the corporation, or made any investigation into the matter at all. Company, of course, disputes these allegations. But it is precisely because the issues are disputed that it was error for the trial court to resolve the issues in a "hybrid" motion to dismiss.

## IV

The judgment is reversed and the matter is remanded to the trial court.

Wallin, J., and Sonenshine, J., concurred.