[No. G011966. Fourth Dist., Div. Three. Feb. 4, 1992.]

DONALD DUFFEY et al., Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
COAST HOMEOWNERS ASSOCIATION et al., Real Parties in Interest.

**COUNSEL**

Darryl J. Paul for Petitioners.

No appearance for Respondent.

Durst & Landeros, Lee H. Durst and Jose G. Landeros for Real Parties in Interest.

## OPINION

**SILLS, P. J.**—This case presents a different twist on a common situation in California. A property owner proposes to build an improvement which neighbors claim will obstruct their view and violate the "CC&Rs" [1] to which the property is subject. If the homeowner association charged with enforcing the CC&Rs does not take action against the owner, the offended neighbors often take matters into their own hands and sue both the property owner and the homeowner association to prevent the improvement. (See e.g., *Posey v. Leavitt* (1991) 229 Cal.App.3d 1236 [280 Cal.Rptr. 568] [deck encroaching on common area]; *Cohen v. Kite Hill Community Assn.* (1983) 142 Cal.App.3d 642 [191 Cal.Rptr. 209] [fence obstructing adjoining landowner's view]; *Beehan v. Lido Isle Community Assn.* (1977) 70 Cal.App.3d 858 [137 Cal.Rptr. 528] [construction of house in arguable contravention of setback restrictions].)

In this case it is the homeowner association which has initiated the litigation, in particular, a request for declaratory relief concerning whether the CC&Rs prohibit a proposed improvement. The twist is that the homeowner association has named not only the property owner as a defendant, but the complaining neighbors as well.

The neighbors brought a motion for judgment on the pleadings to extricate themselves from the case. The trial court denied the motion and the neighbors have now petitioned this court for a peremptory writ of mandate commanding the trial court to grant the motion. We grant the petition.

I

As this matter comes to us by way of a thwarted motion for judgment on the pleadings, the following facts are taken from the first amended complaint of the plaintiff, the Coast Homeowners Association (the homeowner association), filed in January 1988: The Bertrams, Duffeys, and Mehrenses each own homes in San Clemente subject to certain CC&Rs. The Bertrams have

---

[1] "CC&Rs" stands for "covenants, conditions, and restrictions." The term is technically inaccurate because declarations typically do not include conditions, which, if breached, would cause the property to revert to the developer. (Sproul & Rosenberry, Advising Cal. Condominium and Homeowners Associations (Cont.Ed.Bar 1991) § 7.1, pp. 300-301 [hereafter Sproul and Rosenberry].)

submitted a set of plans to the homeowner association for the construction of a patio cover. The homeowner association is organized as a corporation under the laws of California. The Duffeys and the Mehrenses are next-door neighbors of the Bertrams, and have objected[2] to the proposed patio cover because it will block their ocean views. The Bertrams contend the CC&Rs do not prohibit the patio cover; the Duffeys and the Mehrenses contend they do. The homeowner association requests a judicial declaration whether the CC&Rs do, indeed, prohibit the proposed patio cover and whether it should deny or approve the Bertrams' proposed construction.

In October 1991, the Duffeys and the Mehrenses brought a motion for judgment on the pleadings on the grounds there is no controversy between them and the homeowner association and no relief is being sought against them by the homeowner association. The Bertrams did not oppose the motion. The homeowner association did oppose it, contending, in essence, it was enough to allege that there is a controversy between the Bertrams on the one hand, and the Duffeys and the Mehrenses on the other, to establish a cause of action on the part of the homeowner association for declaratory relief.

The trial court denied the motion and the Duffeys and the Mehrenses filed this proceeding. We invited informal responses. The homeowner association makes two arguments. One, if the Duffeys and the Mehrenses had not voiced their objections to the Bertrams' patio cover in writing, the homeowner association would not have had to file this lawsuit. Two, if the Duffeys and the Mehrenses were dismissed from the case before the resolution of the dispute over the CC&Rs, they could sue the homeowner association if they did not approve of the outcome; the Duffeys and the Mehrenses must be kept in this litigation to avoid subjecting it to a "no-win" situation.

## II

Before we address the homeowner association's arguments, we note the obvious. The homeowner association seeks no relief against the Duffeys or the Mehrenses. This is the dispositive fact in the petition before us.

Courts analyze homeowner associations in different ways, depending on the function the association is fulfilling under the facts of each case. Courts have treated associations as landlords (*Frances T.* v. *Village Green Owners Assn.* (1986) 42 Cal.3d 490, 499-501 [229 Cal.Rptr. 456, 723 P.2d 573, 59

---

[2]In its response to the petition for writ of mandate, the homeowner association states that the Duffeys and the Mehrenses "voiced their objections in writing." The complaint, however, makes no mention of written, as distinct from oral, objections.

A.L.R.4th 447] [association could be held liable for rape and robbery of individual owner who was not allowed to install additional lighting at time of crime wave]), minigovernments (*Laguna Publishing Co.* v. *Golden Rain Foundation* (1982) 131 Cal.App.3d 816, 844 [182 Cal.Rptr. 813] [gated community could not discriminate among give-away newspapers]; businesses (*O'Connor* v. *Village Green Owners Assn.* (1983) 33 Cal.3d 790, 796 [191 Cal.Rptr. 320, 662 P.2d 427] [condominium project with age restrictions in CC&Rs was "business" within meaning of Unruh Civil Rights Act]) and corporations (*Beehan* v. *Lido Isle Community Assn., supra,* 70 Cal.App.3d 858, 865-867 [board of directors' good faith refusal to take action against construction of house in arguable contravention of setback restrictions was protected by corporate business judgment rule]).

The nature of the present case invokes the "corporate" function of the association. Of the four cases just cited, *Beehan*, which applied corporate law, is the one most similar to this, involving, as it did, a dispute between two neighbors over what sort of construction was allowable under recorded land use restrictions. Moreover, corporate principles also make the most sense in this case. The homeowner association is not acting as a business seeking a profit, a landlord exercising management over tangible property, or a minigovernment physically controlling access to its "citizen's" property. The homeowner association here is incorporated, but is torn between competing factions as to what collective action to take. Corporate law provides a ready framework for this problem.

Under corporate principles, the homeowner association has no cause of action against the Duffeys and Mehrenses, as demonstrated in *Weisman* v. *Odell* (1970) 3 Cal.App.3d 494 [83 Cal.Rptr. 563]. In *Weisman*, minority shareholders sued a corporation and its majority shareholders seeking to dissolve the corporation because the majority shareholders had operated the entity for their own benefit at the expense of the minority. No direct relief or damages, however, were requested against the majority shareholders.

The majority shareholders successfully demurred to the complaint, and the decision was affirmed on appeal. The appellate court reasoned the majority shareholders could not be joined as defendants against their will because "[i]t is fundamental that a person should not be compelled to defend himself in a lawsuit when no relief is sought against him." (3 Cal.App.3d at p. 498.) Because the "sole relief" was the dissolution of the corporation, the majority shareholders could "not be compelled to be parties defendant under the pleadings." (3 Cal.App.3d at p. 499.)

Here, it is undisputed that no relief is sought against the Duffeys or the Mehrenses. While they, like the majority shareholders in *Weisman*, may be

affected by the trial court's ultimate decision, nothing will happen to them directly as a result of that decision.

The case law on the subject of indispensable parties[3] also supports our conclusion. In *Lushing* v. *Riviera Estates Assn.* (1961) 196 Cal.App.2d 687 [16 Cal.Rptr. 763], a property owner submitted plans to a homeowner association to build a second house on a particular lot. The association refused to pass on or consider the plans, contending that the lot in question was not a "building site" within the meaning of the declarations governing the property. The property owner sued the association and the trial court decided the issue in favor of the owner. The association appealed, contending, among other things, that the property owner should have joined the other lot owners as indispensable or conditionally necessary parties to the action. (196 Cal.App.2d at p. 690.) The appellate court rejected the contention, reasoning there was no need to join the other lot owners because they were not necessary to a "complete determination of the controversy." (*Ibid.*)

The impact of land use litigation on the rights of neighbors was also touched on in *Leonard Corp.* v. *City of San Diego* (1962) 210 Cal.App.2d 547 [26 Cal.Rptr. 730]. In *Leonard Corp.*, a developer sued a city for declaratory relief concerning the correct zoning for a particular tract of land. Adjacent landowners sought to intervene, claiming they purchased their own property in reliance on the developer's statements that the tract in question would be restrictively zoned. They argued they were indispensable parties to the dispute. The trial court denied the request and the court of appeal affirmed the decision.

The *Leonard Corp.* court, in essence, reasoned that the adjacent landowners were not indispensable parties because there was no logical demarcation between them and any other person who might be somehow affected by the developer's plans: "If interveners were indispensable parties, then it might well be said that every home owner on adjacent subdivisions in Point Loma was an indispensable party who might claim some injury or loss by reason of the zoning ordinance." (210 Cal.App.2d at p. 550.) It was enough that the trial court could make a "complete determination" of the zoning controversy with just the parties already before it. (*Ibid.*)

*Lushing* and *Leonard Corp.* articulate principles applicable to the instant case. The only parties the trial court needs to make a "complete determination" about the applicability of the CC&Rs to the Bertrams' proposed patio cover are the Bertrams and the homeowner association.

---

[3]Under Code of Civil Procedure section 389, a person who claims an interest in the subject matter of an action and is so situated as to leave any party already in the case subject to substantial risk of inconsistent obligations "shall be joined" as a party to the action. As we are about to show, Code of Civil Procedure section 389 is not applicable here.

Moreover, as in *Leonard Corp.*, there is no principled demarcation to distinguish some of the Bertrams' neighbors (the Duffeys and the Mehrenses) from others who have not been joined in the litigation. Not only will the Duffeys and the Mehrenses be affected by this litigation, but so will all owners subject to the disputed CC&Rs. Patios as yet unbuilt by owners in the tract now blissfully unaware of the Bertrams' plans may be affected by the outcome of this case. But as the *Leonard Corp.* court perceived, it is unreasonable to join every nearby landowner who might conceivably be affected by the litigation. It is enough that the homeowner association, charged with the enforcement of the CC&Rs (see discussion below), and the arguably offending property owners, are in it.

## III

### A

We now turn to the homeowner association's two arguments in favor of keeping the unwilling Duffeys and Mehrenses in the case. The first is that but for the Duffeys and the Mehrenses, the homeowner association would not have needed to file this action in the first place.

It does not follow, however, that the individual owner must be a defendant in any lawsuit brought by a homeowner association to discharge its own duty to enforce the CC&Rs simply because that owner complains about a neighbor's proposed construction. Homeowner associations have the responsibility of enforcing a development's declaration of restrictions. (*Cohen v. Kite Hill Community Assn., supra,* 142 Cal.App.3d 642 [association could be held liable for failing to enforce architectural standards in CC&Rs]; see also Sproul and Rosenberry, § 1.2, p. 5.) This duty exists independently of what any given group of owners, such as the complaining neighbors in this case, might think or assert. The Duffeys' and the Mehrenses' written objection to the Bertrams' proposed construction is thus quite irrelevant to the question of what the association must do about that construction. If the Bertrams' construction is, indeed, contrary to the CC&Rs, the association would still have the responsibility of trying to prevent it even if the Duffeys and the Mehrenses favored it.[4]

---

[4]To use a farfetched example, if the Bertrams sought to turn their backyard into a toxic waste dump, and their neighbors failed to oppose the idea, would this relieve the association from the obligation to enforce the CC&Rs, which, we presume, would forbid such a use? If not, as is obviously the case, then the fact of neighbor opposition is similarly independent of the association's obligation.

B

▇ The homeowner association also argues the Duffeys and the Mehrenses must remain in the case lest they sue the association if they are unhappy with the outcome. This argument is similarly unpersuasive.

If, after this litigation is over, the Duffeys and the Mehrenses are unhappy because the court has rejected their interpretation of the CC&Rs on the merits, they will have only themselves to blame. Civil Code section 1354 gives them the right to join the litigation to enforce the CC&Rs if they so desire.[5] If they are at all concerned that the homeowner association will not vigorously press their interpretation of the CC&Rs to the trial court, now is the time for them to exercise their rights under Civil Code section 1354 and do so.

The association, for its part, need only make a good faith effort to obtain a judicial declaration on the merits of the dispute. Code of Civil Procedure section 374 gives an association standing to pursue "matters pertaining" to the "[e]nforcement of the governing documents" of a "common interest development." Enforcement is impossible when governing documents are unclear as applied in a given context. Interpretation of governing documents is undoubtedly a "matter pertaining" to their enforcement. Accordingly, we conclude Code of Civil Procedure section 374 authorizes homeowner associations to file declaratory relief actions such as this one where there is a need for an authoritative interpretation of governing documents.

At the same time, however, Code of Civil Procedure section 374 specifically relieves homeowner associations from the need to join "the individual owners of the common interest development."[6] When read in conjunction with Civil Code section 1354, an important implication emerges from this aspect of the statute: if there is a good faith dispute concerning the interpre-

---

[5]The text of Civil Code section 1354 is: "The covenants and restrictions in the declaration shall be enforceable equitable servitudes, unless unreasonable, and shall inure to the benefit of and bind all owners of separate interests in the development. Unless the declaration states otherwise, these servitudes may be enforced by any owner of a separate interest or by the association, or by both. In any action to enforce the declaration, the prevailing party shall be awarded reasonable attorney's fees and costs."

[6]Code of Civil Procedure section 374 provides:

"An association established to manage a common interest development shall have standing to institute, defend, settle, or intervene in litigation, arbitration, mediation, or administrative proceedings in its own name as the real party in interest *and without joining with it the individual owners of the common interest development*, in matters pertaining to the following:

"(a) Enforcement of the governing documents.

"(b) Damage to the common areas.

"(c) Damage to the separate interests which the association is obligated to maintain or repair.

tation of the CC&Rs, a homeowner association need not vigorously advocate any particular interpretation—individual owners can do that if they want to under Civil Code section 1354. As long as the "matters" relate to the enforcement of the CC&Rs (which would entail joining the parties *against whom* they are to be enforced), the association has standing to litigate them without joining the neighboring owners with their various viewpoints. If those owners want to press their own interpretations, Civil Code section 1354 allows them to jump into the fray directly. Otherwise, they are free to stay on the sidelines.

This aspect of the statute makes sense in light of the conflicts to which homeowner associations are inevitably subject. The instant case is a good example. If the Bertrams are correct in their interpretation of the CC&Rs, then the association must allow the construction of the patio cover. The rights of not only the Bertrams are involved, but of every other homeowner who would like to exercise the right to construct a patio cover in the development. If the Duffeys and the Mehrenses are correct, then the association must seek to prevent the construction of the Bertrams' patio cover to protect the rights of the Duffeys, the Mehrenses, and every other homeowner who does not want a neighbor's patio cover to block their view. Given this "no-win" position, it is enough for the association to seek a determination of the controversy joining only the arguably offending property owners.

On the other hand, if the association, for some reason, lets the case go by default and be disposed of on some purely procedural basis, it will be as if the association had done nothing to enforce the CC&Rs. Worse, the Duffeys and the Mehrenses (or other neighbors of like mind) may have foregone their own rights to enforce the declarations under Civil Code section 1354 on the assumption that the association would obtain a judicial declaration on the issue, one way or the other. If the homeowner association did allow the case to go by default and for that reason alone the Bertrams were able to build their patio cover, then the Duffeys and the Mehrenses ought to be able to sue the association for failing to enforce the CC&Rs. (See *Cohen* v. *Kite Hill Community Assn., supra*, 142 Cal.App.3d 642 [duty of homeowner association to enforce architectural standards set forth in declarations].) Either way—whether there is a decision on the merits or not—there is no reason now to keep the Duffeys and the Mehrenses in this case involuntarily.

Even though the Duffeys and the Mehrenses need not be joined as parties, there is no question as to the binding effect of this litigation on them. The policy behind Code of Civil Procedure section 374 requires that declaratory

---

"(d) Damage to the separate interests which arises out of, or is integrally related to, damage to the common areas or separate interests that the association is obligated to maintain or repair." (Italics added.)

judgments brought in litigation authorized under the statute be res judicata, and binding on the individual owners, including all those who do not participate in the litigation. Unless an association's litigation is binding, the benefits of section 374 will vanish. (See Comment, *Homeowner Association Standing in California: A Proposal to Expand the Role of the Unit Owner* (1986) 26 Santa Clara L.Rev. 619, 627.)

## IV

Homeowner associations play an increasingly important role in the daily lives of Californians. It is common knowledge that much of the new housing developed in recent years—including single-family detached dwellings—is subject to CC&Rs enforceable by such associations. Some large homeowner associations have budgets which put them on a par with small cities and towns. In many areas of our state homeowner associations have practically become a "quasibranch" of municipal government. (Cf. Sproul and Rosenberry, *supra*, § 6.5, p. 252 [noting both associations and local governments can "be responsible for providing services such as road maintenance, street lighting, parks, recreation, and utilities"]; see also *Cohen v. Kite Hill Community Assn., supra*, 142 Cal.App.3d 642, 652 ["approval of a fence not in conformity with the Declaration is analogous to the administrative award of a zoning variance"].)

Given this role, it would be incongruous indeed if the expression of opinion to a homeowner association by one neighbor about another neighbor's proposed construction were cause to name the objecting neighbor in a lawsuit. Merely standing up at a homeowners' or board of directors' meeting to argue that one's neighbors' plan to paint their garage door Day-Glo orange with magenta polka dots is prohibited by the CC&Rs should not land one in a lawsuit. Even a "small" lawsuit for declaratory relief can be expensive.

The tactic employed by this homeowner association of naming objecting neighbors in a declaratory relief lawsuit only sows the seeds of destruction of its own declarations. If every neighbor who demands enforcement of the CC&Rs winds ups in court, no one will demand enforcement, and landscape and construction standards will effectively cease to exist. It is difficult to imagine a denser pall cast over association governance than the prospect of being named in a lawsuit for simply insisting the association do its job.

In this case, for instance, the Duffeys and the Mehrenses have presumably had to incur legal expenses for more than four years, if only to "monitor" the case. Those expenses have functioned, in essence, as a penalty for their having objected to the Bertrams' plans.

Enough is enough. Having invited and received a response from the homeowner association, issuance of an alternative writ would not assist our resolution of this matter. Indeed, it would only increase the fees the petition seeks to alleviate,[7] as well as cause unnecessary delay. A peremptory writ in the first instance is therefore appropriate. (See *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 178 [203 Cal.Rptr. 626, 681 P.2d 893].) Let a peremptory writ of mandate issue directing the trial court to vacate its denial of the motion for judgment on the pleadings brought by the Duffeys and the Mehrenses and enter a new judgment in their favor.

Wallin, J., and Sonenshone, J., concurred.

---

[7] We express no opinion on what right, if any, the Duffeys and the Mehrenses may have to recoup their fees under Civil Code section 1354.