[Civ. No. 4030. Third Appellate District.—March 17, 1930.]

E. C. MILES, Appellant, v. MALCOLM McFARLANE et al., Respondents.

Dowd & Reagh for Appellant.

James M. Hanley for Respondents.

THOMPSON (R. L.), J.—This is an appeal from a judgment which was entered against the plaintiff upon an order sustaining a demurrer to the amended complaint and denying leave to again amend the pleading.

The amended complaint contained three counts, the last of which was dismissed by the plaintiff. This last cause of action was based upon allegations of simple *assumpsit*.

It was alleged The Marguerite Placer Mining Company executed and delivered to William H. Dowe on May 26, 1921, a written agreement to sell certain gold mining claims in Placer County consisting of 1100 acres of land, for the sum of $150,000, payable in annual installments of $22,500,

which were due on the fifteenth day of each October until the purchase price was fully paid; first payment was made October 15, 1921; after the first payment one-half of the net proceeds from the operation of the mine was to be turned over to the selling corporation to be applied on the purchase price of the mine; pursuant to authorization the contract was immediately assigned to the Feather Forks Gold Gravel Company, in which corporation the plaintiff held twenty per cent of the capital stock and became a vice-president and director; the three McFarlane brothers who were named as defendants owned eighty-five per cent of the stock of the selling corporation; one of these defendants, Gilbert McFarlane, possessed practical mining experience and had a knowledge of the character and value of the ore contained in the mine and the manner of operating it; he was elected director and managing agent of the new mining enterprise; the plaintiff was without experience in mining and had great confidence in the knowledge and ability of the said Gilbert McFarlane in that regard; the purchasing corporation defaulted in the payment of the second installment of the purchase price of the property which was due October 15, 1922, and had no assets with which to meet this obligation. It is then alleged that said sum of $22,500 being due and unpaid, ''defendants . . . entered into a conspiracy to induce plaintiff to pay to them the said sum of $22,500, intending that . . . they would . . . make it impossible for said Feather Forks Gold Gravel Company to either repay the said sum to plaintiff or secure sufficient funds by its mining operations to continue to make payments under the said contract, so that the same should become forfeited . . . '' It was then alleged that the last-mentioned corporation was without assets with which to make these payments except such proceeds as might be derived from the mining, milling and sale of the gold secured from the operation of said claims; that the defendants represented to the plaintiff that ''there was then available, blocked out, ascertainable and readily convertible into cash over $50,000 worth of gold ore in said mining properties, and that it would take no more than four or five months at the latest to carry operations in said mine to the point where the said ore could be sold or milled so that money could be realized therefrom and that if plaintiff would advance

said sum . . . to save the rights of the said Feather Forks Gold Gravel Company in its contract, . . . both said companies could and would severally repay to plaintiff the said sum . . . ; that out of said ore it would be possible to repay plaintiff at the rate of $4,000 per month.''

It was then alleged that relying on these representations the plaintiff did pay to the defendants said sum of $22,500, but that the defendants made no real effort to operate the mine or extract the gold therefrom, but, upon the contrary, "wilfully, corruptly, deliberately and wantonly impeded, hindered and destroyed the production of said mine by means of sundry acts of mismanagement the nature whereof the plaintiff is unable to state, . . . '' with the purpose of causing a breach and forfeiture of said contract; that the purchasing corporation "was unable to secure any funds wherewith to make payments on said contract, and . . . by reason of failure to make any further or additional payments, . . . said mine, under the terms of said contract reverted to and became the property of defendant, The Marguerite Placer Mining Company''; that therefore no part of said sum of $22,500 has been repaid the plaintiff, but that the whole thereof remains due and unpaid; that said mine contains gold ore of the value of $50,000; that the mine became flooded by water and the operation thereof was abandoned and that the selling corporation threatens to convert said mine and the proceeds therefrom to its own use and thus prevent the repayment of said sum of money to the plaintiff.

The second cause of action merely alleges that on November 28, 1922, the defendants agreed that if the plaintiff would pay the defendant corporation the sum of $22,500 the defendants would cause the repayment thereof to be made in installments of $4,000 each month from the gold which was to be taken from said mining claims; that the plaintiff thereupon advanced said sum of $22,500 to the defendant corporation, no part of which has been repaid. It was, however, not alleged that any gold from which this loan was to repaid was ever secured from the operation of said mining property, or that the defendants had authority to operate the same.

The prayer of the amended complaint asked that a trust and lien be impressed upon the mining property to secure

to the plaintiff the repayment of said sum of $22,500, and that a receiver be appointed to take charge and operate said mine for the benefit of the plaintiff until said indebtedness was fully repaid. There was no demand for a judgment for money had and received.

The first cause of action was intended to be based upon a charge of fraud and collusion. It did, however, contain allegations which might raise an issue based on *assumpsit*, except for the fact that the prayer of the complaint omits reference to such a cause of action, and the third count, which was drawn upon that very theory, was voluntarily dismissed by the plaintiff, after a demurrer to this count had been overruled and the defendants were given fifteen days in which to answer it. It must be assumed, therefore, that the plaintiff intended to waive his right to prosecute the action on the ground of *assumpsit*.

This leaves only the questions as to whether the first count sufficiently states a cause of action founded on fraud and collusion, and whether the second cause of action is sufficiently alleged.

Neither cause of action is sufficiently alleged, and the trial court properly sustained the demurrer. The first cause consisted of allegations of fraud and collusion against The Marguerite Placer Mining Company and its majority stockholders. The purchasing corporation, which held the equitable title to the property, was not made a party to the action. It is difficult to see how the plaintiff could hope to procure the appointment of a receiver and take charge of the Feather Forks Gold Gravel Company without making it a party to the action. By virtue of the contract this purchasing corporation had the exclusive right of possession. The complaint fails to adequately allege that The Marguerite Placer Mining Company became re-invested with the title to the mine. It is stated that, "by reason of failure to make . . . payments . . . said mine, *under the terms of said contract*, reverted.'' This is a mere conclusion which is expressly based upon the assumption that the contract declares an automatic forfeiture for failure to pay the installments. While the allegation of an asserted fact which is stated in the form of a conclusion may ordinarily be sufficient in the absence of a special demurrer, it is rendered inadequate, however, when the recited facts upon

which it depends fail to support the conclusion. A conclusion has no greater force than the express premise upon which it is founded. The allegation regarding the reversion of title, to the mine is based solely upon the assumption that it occurred "under the terms of the contract." The contract is made a part of the complaint and it contains no such provision for a forfeiture or reversion of title for default in the payment of installments of the purchase price. The complaint therefore fails to adequately allege title or right of possession of the mine in the selling corporation. ▉ The plaintiff held no title to the mining property equitable or otherwise, except as a stockholder of the purchasing corporation. There is nothing in the allegations of the complaint that would create an involuntary trust in the property in the plaintiff's favor, nor impress the mine with a lien to secure the payment of the $22,500 which he paid to the corporation defendant. If, as a stockholder of the Feather Forks Gold Gravel Company, the plaintiff desired to institute an action for the benefit of that corporation or its stockholders, it was necessary that he should first demand of the corporation that it should institute the action in its own behalf and receive its refusal to do so, or it must appear that such demand would be futile because the corporation was in the control of hostile representatives. (6 Fletcher's Cyc. of Corp., p. 6936, sec. 4068; *Fornaseri* v. *Cosmosart Realty & Bldg. Corp.*, 96 Cal. App. 549 [274 Pac. 597].) No such demand, refusal or situation is alleged or appears in the pleadings.

▉ The complaint fails to specify the acts of alleged fraud upon which the plaintiff relies. It affirmatively appears that he complains of "sundry acts of mismanagement, the nature whereof plaintiff is unable to state." This is fatally defective. Fraudulent acts which are relied upon for a cause of action must be specifically alleged. (12 Cal. Jur. 800, sec. 62.)

▉ The respondents assume that the payment of the $22,500 by the plaintiff was based upon a promise to answer for the debt of the Feather Forks Gold Gravel Company and that, under section 1624 of the Civil Code, it would be void unless some memorandum thereof were in writing. This payment, however, appears to constitute an original obligation. The transaction was not a promise to pay the

debt of another. It was the actual payment of a sum of money. Whether it were recoverable as money had and received by the defendants, or upon the theory of money procured by fraud or false representations, it would constitute an original obligation on the part of the defendants. But even though it be deemed to be founded on the promise to answer for the debt of another, the allegation of an agreement to repay the money presumes that the contract was in writing, when the statute requires it. (12 Cal. Jur. 938, sec. 107.)

The second cause of action merely alleges the payment of the money and a promise on the part of the defendants to repay it within six months, from a specific fund, to wit, the proceeds from the sale of gold gravel in a certain described mine. No reference is made to the allegations contained in the first count. The ownership of the mine and the gold contained therein are not alleged. Nor is it stated that the defendants were authorized to mine or sell the gold. All that is alleged in that regard is that the defendants "now have possession of said gold gravel and (have) failed, neglected and refused to take the same from said mine and either mill or sell the same." This count, therefore, fails to state a cause of action. When the intent of the parties is expressed to the effect that the payment of money is to be made from a specific fund, and not otherwise, the failure of such fund will defeat the right of recovery. (48 C. J. 594, sec. 11; 6 Cal. Jur. 452, sec. 269; *Lynch* v. *Keystone Cons. Min. Co.*, 163 Cal. 690 [126 Pac. 968]; *Clarey* v. *Security Portland Cement Co.*, 99 Cal. App. 783 [279 Pac. 483].)

The plaintiff was granted leave to file one amended complaint. No abuse of discretion on the part of the court appears in denying leave to again amend the pleading. In the absence of such abuse of discretion, the judgment which is entered upon an order sustaining the demurrer will be upheld. (21 Cal. Jur. 119, sec. 77.)

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.