**COUNTRY NATIONAL BANK, Plaintiff,**

v.

**Marshall S. MAYER, Defendant.**

**and related counterclaim and third-party action.**

**No. Civ. S–90–1480 LKK.**

United States District Court, E.D. California.

March 30, 1992.

Paul H. Dawes, Timothy P. Crudo, Latham & Watkins, San Francisco, Cal., for plaintiff and counterdefendant Country Nat. Bank and third party defendant John Oakes.

David L. Edwards, Redding, Cal., Michael L. Wachtell, G. Forsythe Bogeaus, Buchalter, Nemer, Fields & Younger, Los Angeles, Cal., for defendant, counterclaimant and third party plaintiff Marshall S. Mayer.

## ORDER

KARLTON, Chief Judge Emeritus.

This matter is before the court on the motion of Country National Bank and certain of the Bank's directors to dismiss Marshall S. Mayer's second amended counterclaim and third-party complaint for failure to state a claim. For the reasons explained herein, the motion is GRANTED in part and DENIED in part.

## I

## PROCEDURAL BACKGROUND

Plaintiff Country National Bank ("Bank") filed suit in state court against defendant Marshall S. Mayer, a shareholder and a former member of the Bank's board of directors, alleging that Mayer violated the Change in Bank Control Act of 1978, 12 U.S.C. § 1817(j), by failing to timely report acquisition of more than 10 percent of the Bank's stock. The Bank also alleges that Mayer is liable under the Securities and Exchange Act of 1934, 15 U.S.C. § 78a, for insider trading with regard to a prospective purchase of the Bank's shares.

Defendant removed the action to this court, answered the complaint, and filed a counterclaim against the Bank and a third-party complaint against John O. Oakes, President and Chief Loan Officer of the Bank. The counterclaim alleged four causes of action: (1) a shareholder's derivative action; (2) intentional infliction of emotional distress; (3) negligent infliction of emotional distress; and (4) interference with prospective economic advantage.

The Bank and Oakes moved to dismiss the countercomplaint and third-party complaint pursuant to Fed.R.Civ.P. 12(b)(6). In response to the motion, Mayer lodged a first amended counterclaim and third-party complaint which substituted defamation for the fourth claim. I granted the Bank's and Oakes' motion to dismiss the shareholder derivative suit on the ground that Mayer's conclusory allegations of demand and futility failed to state a claim based on federal law. I also dismissed the claims for intentional and negligent infliction of emotional distress. I denied the Bank's and Oakes' motion to dismiss the defamation claim, and granted leave to amend.

Mayer timely filed a second amended counterclaim against the Bank and a third-party complaint ("SAC") against 11 directors of the board.[1] Mayer's first claim is a shareholder derivative action which is substantially similar to that alleged in his previous complaint, although he includes new facts relative to demand and futility. Mayer also realleges his claim for defamation.

The directors and the Bank again moved to dismiss the derivative action for failure to state a claim premised on an assertion of insufficient demand upon the Bank's board of directors and failure to show that such a demand would have been futile. As to the defamation claim, the directors and Bank seek dismissal on the ground that Mayer's counterclaim does not allege that the defamatory statement is untrue. I continued the hearing on the motion to permit the parties to submit supplemental briefing on the question of which law governs the court's determination of sufficiency of demand, in light of *Kamen v. Kemper Financial Services, Inc.*, —— U.S. ——, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991), coincidentally decided the same day I dismissed the first amended counterclaim and third-party complaint with leave to amend. A

---

1. Mayer names as defendants Dan Gover, Phil Grauel, Richard Guiton, Sim Nathan, John Oakes, Robert Peterson, Roy Ramsey, Charles Raudman, William Reuss, Richard Steffans and Ray Toney.

further hearing was held, and the matter is disposed of herein.

## II

## STANDARDS ON A MOTION TO DISMISS

■ On a motion to dismiss, the allegations of the complaint must be accepted as true. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1082, 31 L.Ed.2d 263 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks International Ass'n v. Schermerhorn,* 373 U.S. 746, 753 n. 6, 83 S.Ct. 1461, 1466 n. 6, 10 L.Ed.2d 678 (1963). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. *Id. See also Wheeldin v. Wheeler,* 373 U.S. 647, 648, 83 S.Ct. 1441, 1443, 10 L.Ed.2d 605 (1963) (inferring fact from allegations of complaint).

■ In general, the complaint is construed favorably to the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). So construed, the court may not dismiss the complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. *Hishon v. King & Spaulding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). In spite of the deference the court is bound to pay to the plaintiff's allegations, however, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged." *Associated General Contractors v. California State Council,* 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983).

**2.** I pass over without further comment what some might see as the anomaly inherent in the suggestion that hired hands need protection

## III

## SHAREHOLDER DERIVATIVE ACTION

### A. *Federal Rule of Civil Procedure 23.1*

The directors and Bank move to dismiss the shareholder derivative claim arguing that Mayer failed to plead with sufficient particularity that before he filed suit, an adequate demand was made that the directors themselves bring suit, or that such a demand is excused. Below, I sketch the derivation of the demand/futility rule and determine which law governs its application.

"The derivative form of action permits an individual shareholder to bring 'suit to enforce a *corporate* cause of action against officers, directors, and third parties.'" *Kamen,* —— U.S. ——, ——, 111 S.Ct. 1711, 1716, 114 L.Ed.2d 152, 163 (quoting *Ross v. Bernhard,* 396 U.S. 531, 534, 90 S.Ct. 733, 736, 24 L.Ed.2d 729 (1970)). To prevent abuse of the shareholder's right to bring suit to protect the interests of the corporation from directors' and managers' "misfeasance and malfeasance," equity courts established the requirement that the shareholder demonstrate that it demanded that the corporation itself bring suit, and that the demand was refused or otherwise excused. *Kamen,* —— U.S. at ——–——, 111 S.Ct. at 1716–17, 114 L.Ed.2d at 163–64.[2]

The demand requirement is accommodated by Fed.R.Civ.P. 23.1, which provides,

> In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association ... [t]he complaint shall ... allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority ... and the reasons for the plaintiff's failure to obtain the action or for not making the effort.

In *Kamen,* the Supreme Court clarified the meaning and application of Rule 23.1.

from suits by owners testing their employee's fealty.

The Court explained that although the Rule contemplates a demand requirement and the possibility that the demand may be excused in shareholder derivative suits brought in federal court, it does not *"create* a demand requirement of any particular dimension." —— U.S. at ——, 111 S.Ct. at 1716, 114 L.Ed.2d at 164.[3] "Rule 23.1 speaks only to the adequacy of the representative shareholder's pleadings." *Id.*

Although Rule 23.1 itself has no substantive element, such an element exists. The Supreme Court held in *Kamen* that the "contours of the demand requirement in a derivative action founded on [a federal statute] are governed by *federal* law." *Id.* —— U.S. at ——, 111 S.Ct. at 1717, at 165. Nonetheless, the Court explained that the content of the federal rule relative to the demand requirement is not "wholly the product of a federal court's own devising." *Id.* Only when the federal remedial scheme at issue "evidences a distinct need for nationwide legal standards," or "when express provisions in analogous statutory schemes embody congressional policy choices readily applicable to the matter at hand," should a federal court attempt to develop a federal rule. *Id.* Otherwise, the court should " 'incorporat[e] [state law] as the federal rule of decision,' unless 'application [of the particular] state law [in question] would frustrate specific objects of the federal programs.' " *Id.* (quoting *United*

*States v. Kimbell Foods, Inc.*, 440 U.S. 715, 728, 99 S.Ct. 1448, 1458, 59 L.Ed.2d 711 (1979)).[4]

The Supreme Court explained that the presumption that state law is incorporated into federal common law as the rule of decision is particularly compelling in the area of corporate law. *Kamen*, —— U.S. at ——, 111 S.Ct. at 1717, 114 L.Ed.2d at 165; *see also Burks v. Lasker*, 441 U.S. 471, 478, 99 S.Ct. 1831, 1837, 60 L.Ed.2d 404 (1979) (noting that corporations, as a rule, are creatures of state law). Consequently, the Court held that:

> [G]aps in [federal] statutes bearing on the allocation of governing power within the corporation should be filled with state law "unless the state la[w] permit[s] action prohibited by [those statutes], or unless [the] application of state law would be inconsistent with the federal policy underlying the cause of action."

*Kamen*, —— U.S. at ——, 111 S.Ct. at 1717–18, 114 L.Ed.2d at 166 (quoting *Burks*, 441 U.S. at 479, 99 S.Ct. at 1837). As the Court noted in *Kamen*, the law prescribing the nature and extent of a demand requirement and a futility exception to the demand requirement "relate[ ] to the allocation of governing powers within the corporation," because those rules determine who has the power to control corporate litigation. *Id.* at ——, 111 S.Ct. at 1713, 114 L.Ed.2d at 167.[5]

---

3. In *Kamen*, —— U.S. ——, 111 S.Ct. 1711, 114 L.Ed.2d 152, plaintiff filed a shareholder derivative suit in federal court against a Maryland corporation alleging violations of the Investment Company Act of 1940 (ICA), a federal statute. Plaintiff alleged in her complaint that she had made no demand on the directors that they themselves bring suit because such a demand would have been futile. *Id.* —— U.S. at ——, 111 S.Ct. at 1715, at 162. The district court dismissed the complaint on the ground that plaintiff had failed to plead facts excusing demand with sufficient particularity so as to satisfy Rule 23.1. *Id.* —— U.S. at ——, 111 S.Ct. at 1715, at 163. The *Seventh Circuit* affirmed, concluding that plaintiff's failure to make a pre-complaint demand "was fatal to her case." *Id.* The Seventh Circuit "adopted as a rule of federal common law the [American Law Institute's] so-called 'universal demand' rule, under which the futility exception is abolished." *Id.* The Supreme Court reversed.

4. In *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1210 (9th Cir.1980), the Ninth Circuit considered whether the Rule 23.1 requirement that demand and futility be pled with particularity had been satisfied in the shareholder derivative suit before the court. The court applied federal law, even though the defendant was an Arizona corporation. *See Sax v. World Wide Press, Inc.*, 809 F.2d 610, 613 (9th Cir.1987); *Johnson v. Hui*, 752 F.Supp. 909, 912 (N.D.Cal.1990). In light of *Kamen*, —— U.S. ——, 111 S.Ct. 1711, 114 L.Ed.2d 152, *Greenspun* likely was erroneously decided; the Ninth Circuit should have applied the law of the place of defendant's incorporation to determine the substantive contours of the demand and futility requirement.

5. Because application of state law concerning the futility exception would not be inconsistent with the federal statute at issue, *Kamen*, —— U.S. at ——, 111 S.Ct. at 1722, 114 L.Ed.2d at 171, the Court concluded that in adjudicating derivative claims brought under the ICA, federal courts

The matter at bar differs from *Kamen* in two significant respects. First, because *Kamen* involved a derivative action founded on a federal statute, the contours of the demand requirement were governed by federal law. In contrast, Mayer's claim is a shareholder derivative action founded on state law. Moreover, unlike *Kamen*, the Bank here is not a corporation organized under state law, but rather a federally-chartered bank, organized under the laws of the United States. *See* National Bank Act, 12 U.S.C. §§ 21–216d.

■■■ Counterdefendants argue that because the allocation of governing power within a federally-chartered bank is a question of federal law, the court should apply a federal common law rule of demand and futility to Mayer's state law claims. I cannot agree. The Supreme Court has held that "national banks are subject to state laws, unless those laws infringe the national banking laws or impose an undue burden on the performance of the banks' functions." *Anderson Nat'l Bank v. Luckett,* 321 U.S. 233, 248, 64 S.Ct. 599, 607, 88 L.Ed. 692 (1944); *see also McKee & Co. v. First Nat'l Bank of San Diego,* 265 F.Supp. 1, 5 (S.D.Cal.1967), *aff'd,* 397 F.2d 248 (9th Cir.1968). Although it is true that the National Bank Act, 12 U.S.C. § 93, provides a federal cause of action against the directors of a national bank in certain circumstances, that section is not an exclusive federal remedy preempting state law claims such as shareholder derivative actions. *Harmsen v. Smith,* 693 F.2d 932,

940–41 (9th Cir.1982), *cert. denied,* 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983). I conclude that state law governs the rule of demand and excuse applicable to Mayer's shareholder derivative claim against the Bank, unless the law of demand and excuse infringes the National Bank Act or otherwise imposes an undue burden on the performance of the Bank's functions.[6] I turn now to that question.

The National Bank Act describes the requisites to formation and organization of national banks. *See* 12 U.S.C. §§ 21–42. Section 24 describes in general terms the corporate powers of a national bank, including the power to make contracts, to sue and be sued "in any court of law and equity," to elect or appoint directors, to prescribe bylaws, and "[t]o exercise by its board of directors or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking," to issue and sell securities, and to invest in tangible property. 12 U.S.C. § 24. Subchapter III describes in general terms the number, qualifications and process for electing directors of a national bank. 12 U.S.C. §§ 71–78. Other than authorizing a national bank "to sue and be sued," *id.* § 24, the Act does not specify how the power to sue is allocated between directors and shareholders.[7] In sum, nothing in the statute creating national banks suggests a conflict with a state's demand and futility requirement in the context of a shareholder derivative suit, nor does the statute suggest that application of state law would impose

---

"must apply the demand futility exception as it is defined by the law of the state of incorporation." *Id.* at ——, 111 S.Ct. at 1723, 114 L.Ed.2d at 172.

**6.** Even if the court were to conclude that federal law governs Mayer's claims against the Bank, the court would nonetheless be required to consider whether state law should be incorporated to provide the content of that federal law. *See Mardan Corp. v. C.G.C. Music, Ltd.,* 804 F.2d 1454, 1457 (9th Cir.1986). To resolve this question, the court would first discern whether Congress intended the courts to develop a federal common law rule or to incorporate state law to fill the interstices of the National Bank Act. *Id.* at 1458. In the absence of clear congressional intent, one way or the other, the court would

determine: (1) whether the issue requires a nationally uniform body of law; (2) whether application of state law would frustrate specific objectives of the federal program; and (3) whether application of a federal rule would disrupt commercial relationships predicated on state law. *Id.* (citing *Kimbell Foods,* 440 U.S. at 728–29, 99 S.Ct. at 1458–59).

**7.** The California Supreme Court recently considered the language of § 24 of the National Bank Act and concluded that the power to sue and be sued devolves on the bank, rather than being specifically delegated to the directors. *Wells Fargo Bank v. Superior Court of the City and County of San Francisco,* 53 Cal.3d 1082, 1097–98, 282 Cal.Rptr. 841, 811 P.2d 1025 (1991).

an undue burden on the Bank's functions. I conclude that application of state law is wholly appropriate.

The question of which state's law to apply in determining the contours of demand and futility is readily at hand. Mayer alleges that the Bank's principal place of business is Redding, California. SAC ¶ 4. Under the Act, the Bank is required to designate the place of operation in its organization certificate. 12 U.S.C. § 22. Counterdefendants have not asserted that the Bank's place of operation is other than California.[8] Thus, while Rule 23.1 governs the adequacy of Mayer's pleadings, *Kamen*, — U.S. at —, 111 S.Ct. at 1716, 114 L.Ed.2d at 164, the court applies the substantive law of California, the Bank's principal place of business, in determining whether Mayer's allegations of demand and futility state a claim for relief.

### B. *Allegations of the Complaint*

Mayer alleges that he was a member of the board of directors of the Bank, and was and is now a shareholder. SAC ¶ 3. The Bank's board consists of 13 directors. *Id.* ¶ 9. The 11 third-party defendants—Gover, Grauel, Guiton, Nathan, Oakes, Peterson, Ramsey, Raudman, Reuss, Steffans and Toney—are alleged to be directors of the Bank. *Id.* ¶¶ 5, 6.

Mayer seeks redress on behalf of the corporation for the following acts: (1) defendants approved loans and credit for one John Meamber without adequate security and against the advice of other bank officers, at the same time that Oakes entered into and maintained an undisclosed personal transaction with Meamber, *id.* ¶ 10; (2) defendants approved loans to directors Dawson, Guiton, Ramsey, Raudman, Steffans and Toney on terms more favorable than those made to members of the general public, *id.* ¶ 12;[9] (3) defendants refused to remove Oakes as President and Chief Loan Officer of the Bank, despite the fact that during the time relevant to this lawsuit, other local banks in Shasta County paid about $2 million in cash dividends, while the Bank paid none, *id.* ¶ 15;[10] (4) defendants permitted the Bank to enter into a lease agreement with Tri–Penta leasing, a partnership whose principal partners were ten defendant directors—Gover, Grauel, Guiton, Nathan, Peterson, Ramsey, Raudman, Reuss, Steffans, and Toney, *id.* ¶ 16;[11] (5) defendants caused the Bank to enter into contracts with Ramsey and Raudman, without competitive bidding, to provide Bank services for houseboat repairs, *id.* ¶ 17; (6) defendants caused the Bank to enter into participation loans with West Point Bank of Sacramento in consideration for reciprocal credit extensions by West Point Bank to Steffans and Toney, *id.* ¶ 18; (7) defendants caused the Bank to initiate and prepare a stock offering to enable the Bank to make larger loans to directors, *id.* ¶ 19;[12] (8) defendants prepared a 1989 shareholder notice that failed

---

8. I also note that for purposes of diversity jurisdiction, a national bank is a "citizen" of the state where it has its principal place of business. *American Surety Co. of New York v. Bank of California*, 44 F.Supp. 81, 83 (D.Or.), *aff'd*, 133 F.2d 160 (9th Cir.1943).

9. Mayer alleges that these loans were made in violation of federal banking regulations, and that *during Mayer's term on the board, he was the only director who did not receive a loan from the bank. Id.* ¶ 12. When Dawson defaulted on his loan, Mayer alleges defendants failed to take any collection action. *Id.* ¶ 11. Mayer further alleges that an independent banking consultant hired by the Bank to evaluate its loan portfolio, informed the Bank that the loans to Guiton, Ramsey, Steffans, and Toney were graded "three" on a scale of one to five. *Id.* ¶ 13. Mayer alleges that at the time these loans

were made, the directors knew or should have known that the Comptroller of the Currency had reviewed the Bank's lending policy to directors, and had identified numerous violations regarding insider lending transactions. *Id.* ¶ 14.

10. "Mayer called to the attention of the defendant directors that the Bank's poor performance was due in part to the failure of defendant Oakes to take remedial action to correct the Bank's poor lending practices, as alleged [in the complaint]." *Id.* ¶ 15.

11. Under the lease, the Bank allegedly leased its office premises at a cost far in excess of comparable leaseholds in the local area. *Id.* ¶ 16.

12. The offering allegedly was subsequently withdrawn, at a loss of $125,000 to the Bank. *Id.* ¶ 19.

to disclose self-dealing transactions involving Oakes, and to disclose other contracts or loans entered into with directors, *id.* ¶ 20; and (9) Oakes failed to disclose to the directors the prospective purchase of the Bank by one Paul Learner, in order to benefit Oakes at the expense of Mayer and other shareholders. *Id.* ¶ 21.

Mayer alleges that in January 1989, he "made known his objections to" loans made upon inadequate security which were approved by the defendant directors, and loans made to directors at discounted interest rates, dilution of capital because of proposed stock offerings, the terms of a lease agreement between the Bank and Tri–Penta leasing, and unspecified self-dealing transactions by Oakes. *Id.* ¶ 22. Mayer alleges that he proposed amendments to the Bank's bylaws to avoid the acts about which he complained, but that the board declined to take action. He alleges that he made a similar demand, in writing, on January 9, 1989, and that the Bank's "Strategy Committee" rejected his demands. The Strategy Committee's recommendation was ratified by the full board. The Strategy Committee is alleged to be composed of defendant directors, who "constituted a majority of the full Board of Directors of the Bank." *Id.* Mayer alleges, therefore, that the board's "actions were not disinterested or made in good faith, under the business judgment rule or otherwise...." *Id.* In rejecting Mayer's demands, the directors "did not act in good faith or in any reasonable belief that their refusal to take such action was good business judgment or. in the best interest of the Bank." *Id.* Finally, Mayer alleges that further demands on the board would have been futile because a majority of the directors "either participated in the acts complained of herein or were [sic] controlled by ... Oakes." *Id.*

### 1. Compliance with Rule 23.1

■ As I have explained, Rule 23.1 requires that in a shareholder derivative action filed in federal court, plaintiff must allege "with particularity [his] efforts to obtain the action he desires from the directors ... and the reasons for [his] failure to obtain the action or for not making the effort." Fed.R.Civ.P. 23.1.[13] Mayer alleges that he twice demanded that the directors take action to correct loans made upon inadequate security, loans made to directors at low interest rates, dilution of capital, the Tri–Penta Leasing deal, and Oakes' self-dealing. The board rejected these demands. Mayer alleges that further demands would have been futile because a majority of the directors was not disinterested in the transactions and/or controlled by Oakes, who also was interested in the transactions. These allegations are sufficiently particularized to satisfy Rule 23.1.[14]

---

**13.** California has a pleading analog to Rule 23.1, which provides that a derivative action may not be "instituted or maintained" against either a foreign or domestic corporation unless,

> The plaintiff alleges in the complaint with particularity plaintiff's efforts to secure from the board such action as plaintiff desires, or the reasons for not making such effort, and alleges further that plaintiff has either informed the corporation or the board in writing of the ultimate facts of each cause of action against each defendant or delivered to the corporation or the board a true copy of the complaint which plaintiff proposes to file.

Cal.Corp.Code § 800(b)(2).

Because pleading requirements in federal court are defined by the federal rules, I must test the adequacy of Mayer's pleading by Rule 23.1, applying California's substantive law to determine whether Mayer has stated a claim. Thus, Cal.Corp.Code § 800(b)(2) is not relevant to what the pleadings of a derivative suit in federal court must contain, and Rule 23.1 is not determinate of what a plaintiff must prove to prevail on such a claim.

**14.** It appears to the court that Rule 23.1 was not intended to replace Fed.R.Civ.P. 8 which requires "a short plain statement of the claim showing that the pleader is entitled to relief," but rather must be read in conjunction with that rule. *See Carrigan v. California State Legislature,* 263 F.2d 560, 565 (9th Cir.) ("[w]hen fraud is alleged, it must be particularized as Rule 9(b) requires, but it still must be as short, plain, simple, concise and direct, as is reasonable under the circumstances, and as Rules 8(a) and 8(e) require"), *cert. denied,* 359 U.S. 980, 79 S.Ct. 901, 3 L.Ed.2d 929 (1959); *see also Michaels Building Co. v. Ameritrust Co., N.A.,* 848 F.2d 674, 679 (6th Cir.1988) (same); *Credit & Finance Corp., Ltd. v. Warner & Swasey Co.,* 638 F.2d 563, 566 (2d Cir.1981) (same).

## 2. Compliance with California's Law of Demand and Futility

To survive the Bank's and directors' motion to dismiss, Mayer also must state a claim for relief under California's substantive law of demand and futility applicable in shareholder derivative suits. Below, I examine the contours of those rules.

 A derivative action is a suit brought on behalf of the corporation in order to redress a grievance suffered by the corporation. *Jones v. H.F. Ahmanson & Co.*, 1 Cal.3d 93, 106, 81 Cal.Rptr. 592, 460 P.2d 464 (1969). Under California law, such an action ordinarily must be instituted by the directors of the corporation. *Reed v. Norman*, 152 Cal.App.2d 892, 897, 314 P.2d 204 (1957). The so-called "business judgment rule"[15] provides that the judgment of shareholders and courts cannot supplant the decisions of the directors of a corporation relative to the day-to-day management of the corporation. *See, e.g., Beehan v. Lido Isle Community Assoc.*, 70 Cal.App.3d 858, 865, 137 Cal.Rptr. 528 (1977); *Marsili v. Pacific Gas & Electric Co.*, 51 Cal.App.3d 313, 324, 124 Cal.Rptr. 313 (1975); *and Lewis v. Anderson*, 615 F.2d 778, 781 (9th Cir.1979) (applying California law), *cert. denied*, 449 U.S. 869, 101 S.Ct. 206, 66 L.Ed.2d 89 (1980). "Under this rule, a director is not liable for a mistake in business judgment which is made in good faith and in what he or she believes to be the best interests of the corporation, where no conflict of interest exists." *Gaillard v. Natomas Co.*, 208 Cal.App.3d 1250, 1263, 256 Cal.Rptr. 702 (1989).

 "The business judgment rule applies to all discretionary decisions by the board, including the decision not to pursue a cause of action." *Lewis*, 615 F.2d at 781. Because of the rule, the shareholder must plead and prove that he has made a demand upon the directors to act and that they refused or failed to act. *Fornaseri v. Cosmosart Realty & Bldg. Corp.*, 96 Cal. App. 549, 556, 274 P. 597 (1929); 9 B.E. Witkin, Summary of California Law § 184, at 679 (9th ed. 1989). If the board refuses in good faith and in the reasonable exercise of its business judgment to commence the action, the shareholder may not institute the action. *Beehan*, 70 Cal.App.3d at 865, 137 Cal.Rptr. 528; *Findley v. Garrett*, 109 Cal.App.2d 166, 174, 240 P.2d 421 (1952).

 The precomplaint demand requirement may be excused when the plaintiff demonstrates that demand would be "futile." *Reed*, 152 Cal.App.2d at 898, 314 P.2d 204; *Koshaba v. Koshaba*, 56 Cal. App.2d 302, 308, 132 P.2d 854 (1942); *see also Fornaseri*, 96 Cal.App. at 556, 274 P. 597. Many decisions by California courts interpreting the futility exception to the demand requirement are of little assistance in disposing of the matter at bar since they discuss the substantive requirements in light of California's pleading standard.[16] Nonetheless, upon close examination of California decisions, certain standards emerge. Without question, futility is demonstrated under California's substantive law where the directors are involved or not disinterested in the actions for which plaintiff seeks relief. *See Reed*, 152 Cal.App.2d at 898–900, 314 P.2d 204; *Gaines v. Haughton*, 645 F.2d 761, 766 (9th Cir.1981) (applying California law), *cert. denied*, 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982).[17] Moreover, a case which preceded

---

**15.** California's business judgment rule is codified at Cal.Corp.Code § 309.

**16.** Because demand and futility are required elements of California's substantive law, a federal complaint which fails to allege either a demand or the futility of such demand would be vulnerable to a motion to dismiss. As I have explained, however, California cases holding that conclusory allegations of fraud, conspiracy and bad faith on the part of directors are insufficient to satisfy the state requirements for pleading futility, *see Findley v. Garrett*, 109 Cal.

App.2d 166, 176–77, 240 P.2d 421 (1952); *Fairchild v. Bank of America*, 192 Cal.App.3d 252, 259, 13 Cal.Rptr. 491 (1961), are not applicable.

**17.** Although both *Reed*, 152 Cal.App.2d 892, 314 P.2d 204, and *Gaines*, 645 F.2d 761, are "pleading" cases and thus not directly applicable to the matter at bar, both cases advert to California's substantive law.

In *Reed*, 152 Cal.App.2d 892, 314 P.2d 204, plaintiff, a director of a California corporation, filed a shareholder derivative action against two other directors. In his complaint, plaintiff did

California's current pleading requirement reveals that allegations of domination of the board by a president of the corporation who is adverse to plaintiff's position suffice to demonstrate futility. *See Wickersham v. Crittenden,* 106 Cal. 329, 331, 39 P. 603 (1895) (it was "averred in the complaint, as a reason for not making a request of the directors of the bank to bring this action that the directors were all under the control of Crittenden and acting in conjunction with him"); *see also Miles v. McFarlane,* 104 Cal.App. 513, 519, 286 P. 507 (1930) (demand futile where plaintiff alleges corporation is in hands of hostile representa-

tive).[18] When demand is excused, the court suspends deference to the directors' business judgment because the board as a unit is unable to fulfill its role as the corporation's decisionmaker.[19]

Thus, in order to survive a motion to dismiss, applying California law, Mayer's complaint may allege either: (1) that he demanded that the board take action and the directors declined to do so, and that the directors' decision not to take action was not made in good faith or in the exercise of their best business judgment; or (2) that demand would have been futile, that is, that a majority of the directors was not

not specifically allege demand or futility. *Id.* at 898, 314 P.2d 204. However, reading the pleadings as a whole, the court concluded that demand would have been futile because "[t]he facts alleged are bristling with inferences that [the defendant directors] were bent upon depriving [plaintiff] of his corporate rights." *Id.* The court concluded that plaintiff had alleged that the defendants had: "paid moneys to parties not entitled to them" because those parties "made claims against the corporation which had no substantial basis; assigned claims to an employee and caused default judgments to be entered against the corporation" in order to circumvent an injunction prohibiting the withdrawal of funds; "attempted to cause themselves to be elected directors without first having the necessary shares legally issued to them; appeared at a shareholder's meeting ... where [plaintiff] challenged [defendant's] right to vote the ... shares on the ground that they were void because not paid for as required by the stock permit, [and defendant] voted the shares and elected himself" and his associate directors; and, notwithstanding the California Supreme Court's subsequent annulment of the shares, defendants "manipulated the corporation and its assets in utter disregard of appellant's rights and to his detriment, and that of the corporation." *Id.* at 898–99, 314 P.2d 204.

In *Gaines,* 645 F.2d at 765 n. 5, the board consisted of 15 directors at the time the complaint was filed. Defendant asserted that seven of the 15 directors either participated in or knew of improper transactions. The Ninth Circuit concluded that under California law these seven directors were "interested for purposes of excusing or rendering futile the ... 'demand' requirement." *Id.* The court assumed without deciding that plaintiff's allegation that four other directors with "an economic or financial relationship to the alleged controlling wrongdoers," also were interested so that demand would have been futile. *Id.*

18. Confusing the pleading and substantive issues, in *Gaines,* 645 F.2d at 765 n. 5, the court suggested that it is "uncertain whether allega-

tions of 'control or influence' should suffice to divest a corporation's directors of their ability to make collective corporate decisions." In *Koshaba v. Koshaba,* 56 Cal.App.2d 302, 305, 132 P.2d 854 (1942), the court concluded that plaintiff's allegations that defendant, the president and managing director of the corporation, "completely dominates the board of directors," that other directors "have in all respects ceased to function as directors thereof and have vested the full direction and control of the corporation in Koshaba," were sufficient to demonstrate futility. In *Koshaba,* however, plaintiff's allegations of domination were supported by specific facts demonstrating Koshaba's unilateral control of the board and the corporation, thus satisfying California's pleading standards.

19. Under California law, even if a majority of the directors is charged with wrongdoing in the proposed or pending action, the board may delegate to a disinterested "special litigation committee" the authority to consider the demand or to dismiss the suit. *Will v. Engebretson & Co.,* 213 Cal.App.3d 1033, 1040–41 (1989); *Gaines v. Haughton,* 645 F.2d 761, 770–72 (9th Cir.1981) (applying California law), *cert. denied,* 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982); *Lewis v. Anderson,* 615 F.2d 778, 782–83 (9th Cir.1979) (same). If the committee in good faith decides that refusing a demand or dismissing a derivative action is in the best interests of the corporation, defendant may move to dismiss or for summary judgment. *Engebretson,* 213 Cal.App.3d at 1041, 261 Cal.Rptr. 868.

Mayer alleges that his written demand was considered and rejected by the Bank's "Strategy Committee," which is alleged to be composed of defendant directors, who "constituted a majority of the full Board of Directors of the Bank." SAC ¶ 22. He alleges that the committee was not disinterested and did not act in good faith in rejecting his demand. *Id.* Neither the Bank nor the directors have moved to dismiss on the ground that a disinterested committee considered and rejected Mayer's demand.

disinterested in Mayer's claims, so that the directors' decision not to act on the claims was wrongful or that Mayer's failure to make a demand was excused. I turn now to an analysis of Mayer's complaint.

### a. *Demand*

 Mayer alleges in his complaint that he demanded that the board take action to remedy loans made upon inadequate security, loans made to directors at discounted interest rates, dilution of capital because of proposed stock offerings, a lease agreement between the Bank and Tri–Penta leasing, and unspecified self-dealing transactions by Oakes. These allegations are sufficient to satisfy the demand requirement relative to Mayer's claims arising out of the Meamber loan, loans to six directors, defendants' refusal to remove Oakes, the 1989 stock offering, and the Tri–Penta leasing deal. Although the board declined to take action on Mayer's demands relative to these transactions, Mayer has alleged facts tending to show that the directors were not disinterested and therefore their refusal was not in good faith. Thus he alleges 10 of the 13 directors were partners in Tri–Penta Leasing, and although only six directors are alleged to have received loans at discounted rates, Mayer alleges that Oakes "controlled" the other members of the Board. *See Wickersham*, 106 Cal. at 331, 39 P. 603.

I must reject the directors' and Bank's assertion that the question whether the directors were disinterested in the transactions for which demand was made must be measured as to each transaction in isolation. Mayer alleges that he demanded that the board take action concerning several transactions. Although a majority of the directors was not interested in *each* of the transactions (with the exception of the Tri–Penta Leasing deal), in the aggregate, a majority was implicated. When presented with Mayer's demand, Mayer has alleged facts tending to show that as a group, the directors were not disinterested in the question whether suit should be maintained as to each transaction.

### b. *Futility*

 Mayer does not allege that he demanded that the board take action as to the contracts with Ramsey and Raudman, the participation loans with West Point Bank, and Oakes' failure to disclose Learner's prospective purchase of the Bank. Nonetheless, since Mayer alleges facts tending to show that Oakes is hostile to him, *McFarlane*, 104 Cal.App. at 519, 286 P. 507, and that Oakes controls the other directors, *Wickersham*, 106 Cal. at 331, 39 P. 603, Mayer has alleged that demand as to these transactions would have been futile.

For all the above reasons, the directors' and Bank's motion to dismiss Mayer's shareholder derivative action is DENIED.

### IV

### DEFAMATION CLAIM

 The directors and the Bank move to dismiss Mayer's defamation claim on the ground that Mayer's pleading itself demonstrates that the alleged defamatory statement is not untrue. Mayer alleges that counterdefendants prepared and circulated a Proxy Statement on or about April 10, 1990, which reads,

Mr. Mayer acquired the power to vote 10% or more of the Bank's Common Stock without having first filed a Notice under the Change in Control Laws and receiving permission from the Comptroller of the Currency to do so. The obligation to file a Notice under the Change in Control Laws is a personal obligation of Mr. Mayer and not that of the Bank. Subsequently, on October 16, 1989, the Comptroller of the Currency approved a Notice filed by Mr. Mayer under the Change in Control Laws.

SAC ¶ 27.

Mayer further alleges that,

Prior to the preparation and circulation of this document, defendants, and each of them, had received notice from the Office of the Comptroller of the Currency that it had reviewed Mayer's purchase of the shares referred to therein, and that said office had approved such purchases by Mayer. Nonetheless, defen-

dants made the statement in disregard of its falsity and of the likelihood that it would harm Mayer.

*Id.* ¶ 30.

The directors and the Bank assert that, based on the complaint, the proxy statement is true.

There are two allegations in the proxy statement; first, that Mayer did not file a Notice under the Change in Control Laws and receive permission from the Comptroller of the Currency before he acquired the power to vote 10 percent or more of the Bank's common stock; and second, that Mayer was required under the law to file a Notice and receive permission before acquiring this power. Mayer apparently does not dispute the truthfulness of the first allegation. Mayer does contest his obligation to file a notice and receive permission before acquiring stock. The directors' and Bank's motion to dismiss Mayer's defamation claim is GRANTED with leave to amend to allege specifically that the allegation in the proxy statement is untrue.

## V

### ORDER

In sum, IT IS HEREBY ORDERED as follows:

(1) The directors' and Bank's motion to dismiss Mayer's shareholder derivative claims is DENIED;

(2) The directors' and Bank's motion to dismiss Mayer's defamation claim is GRANTED; and

(3) Mayer is granted fifteen (15) days leave from the effective date of this order to file an amended complaint consistent with the terms of this order.

IT IS SO ORDERED.