**FINANCIAL SOFTWARE SYSTEMS, INC., Plaintiff,**

v.

**FIRST UNION NATIONAL BANK, Defendant.**

**No. CIV.A. 99–CV–623.**

United States District Court, E.D. Pennsylvania.

Nov. 23, 1999.

Joseph A. McGinley, Lavin, Coleman, O'Neil, Ricci, Finarelli & Gray, Philadelphia, PA, for plaintiff.

Joseph G. DeRespini, Robert J. Dougher, Raeder & DeRespino, Philadelphia, PA, for defendant.

## Memorandum and Order

YOHN, District Judge.

In 1997, Financial Software Systems contracted with First Union National Bank to develop and customize banking software for First Union. Within months, defendant stopped making payments due under the contract. Plaintiff filed this suit, alleging numerous violations of state law.

Defendant has filed a motion to dismiss the complaint for lack of subject matter jurisdiction, alleging that there is no diversity of citizenship between plaintiff and defendant.

Plaintiff is a citizen of Pennsylvania by both incorporation and principal place of business. Defendant is a national banking association with its principal place of business in North Carolina and branches in Pennsylvania. Defendant's motion to dismiss argues that as a national banking association with branches in Pennsylvania, defendant is also a citizen of Pennsylvania and the parties are not of diverse citizenship. Resolution of the motion requires a construction of a provision of the National Bank Act, which makes national banking associations "citizens of the states in which they are respectively located." Because I find that a national banking association is not a citizen of each state in which it maintains a branch, I will deny the motion to dismiss.

## BACKGROUND

The facts, as alleged in the complaint and construed in the light most favorable to the plaintiff, are as follows.[1] On Sep-

---

**1.** I need not accept plaintiff's allegations as true in considering a motion to dismiss for lack of subject matter jurisdiction. *See Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir.1997) Nonetheless, because the facts recited here do not bear on the jurisdictional question, I recite the background in the light most favorable to the non-moving party, with-

tember 5, 1997, a contract was fully executed whereby plaintiff contracted to develop and customize banking software for defendant. *See* Amended Complaint ¶ 4 (Doc. No. 7 filed Apr. 1, 1999) [hereafter "Amend. Compl."]. Subsequently, defendant merged with CoreStates, a Pennsylvania bank. *See* Amend. Compl. ¶ 7; Defs. Ans. to Amend. Compl. ¶ 7 (Doc. No. 8 filed Apr. 23, 1999) [hereafter "Defs. Ans."]. Thereafter, defendant stopped making payments due under the contract and plaintiff's demands for payment went unanswered. *See* Amend. Compl. ¶¶ 10–17.

Plaintiff filed its complaint followed by an amended complaint to which defendant responded with a motion to dismiss. Because all of the claims in the action are for violations of state law,[2] no federal question was raised. Instead, plaintiff premised jurisdiction on diversity of citizenship under 28 U.S.C. § 1332. *See* Amend. Compl. ¶ 3; *see also* 28 U.S.C. § 1332(a)(1) (1994 & Supp.1999). Plaintiff is a corporate citizen of Pennsylvania, by incorporation and principal place of business. *See* Amend. Compl. ¶ 1. Defendant is a national banking association ("national bank") with its principal place of business in North Carolina and branch banks in Pennsylvania.[3] *See* Amend. Compl. ¶ 2; Aff. of Ronald I. Nagel in Support of Defs. Mot. to Dismiss for Lack of Subject Matter Juris. ¶ 2 (Doc. No. 12 filed Oct. 4, 1999) [hereafter "Nagel Aff."]. Defendant argues that it is a Pennsylvania citizen because it is a national bank with branch banks in Pennsylvania. *See* Mem. of Law in Support of Defs. Mot. to Dismiss at 3–4 (Doc. 12) [hereafter "Defs. Mot."]. Defen-

dant has filed a motion to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *See* Fed.R.Civ.P. 12(b)(1).

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) challenges the existence of subject matter jurisdiction. Plaintiff bears the burden to prove that the relevant jurisdictional requirements are met. *See Development Fin. Corp. v. Alpha Housing & Health Care,* 54 F.3d 156, 158 (3d Cir.1995); *Mellon Bank (East) PSFS v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992).

A motion to dismiss under Rule 12(b)(1) may present either a facial or a factual challenge to subject matter jurisdiction. *See Mortensen v. First Federal Savings and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977). A facial challenge contests the existence of subject matter jurisdiction on the face of a complaint, while a factual challenge contests the existence of subject matter jurisdiction in fact. *Id.*

"[W]hen there is a factual question about whether a court has jurisdiction, the trial court may examine facts outside the pleadings .... [b]ecause at issue in a factual 12(b)(1) motion is the trial court's jurisdiction-its very power to hear the case.'" *See Robinson v. Dalton,* 107 F.3d 1018, 1021 (3d Cir.1997) (citing *Mortensen,* 549 F.2d at 891). Plaintiff's factual allegations need not be accepted as true. *See Robinson v. Dalton,* 107 F.3d at 1021. The court is free to consider and weigh evidence outside the pleadings to resolve factual issues bearing on the jurisdictional

---

out holding or implying that the allegations are true.

**2.** The Amended Complaint lists seven counts, which are: breach of contract, unjust enrichment, violation of the Uniform Commercial Code, misrepresentation, fraud, bad faith, and deceptive trade practices.

**3.** Plaintiff alleges that further discovery is needed to determine whether defendant had branch banks in Pennsylvania at the time this

action was commenced. *See* Plfs. Resp. to Defs. Mot. to Dismiss at 2 (Doc. No. 13 filed Oct. 20, 1999). I find that defendant did operate branch banks in Pennsylvania when this action was filed. *See* Defs. Ans. ¶ 7; Aff. of Ronald I. Nagel in Support of Defs. Mot. to Dismiss ¶ 3 (Doc. No. 12). Also, because I hold that such operation would not defeat diversity jurisdiction, the question is not determinative of the motion.

issue. *See Gotha v. United States,* 115 F.3d 176, 179 (3d Cir.1997). Consequently, plaintiff must present "affidavits or other competent evidence that jurisdiction is proper." *See Dayhoff, Inc. v. H.J. Heinz Co.,* 86 F.3d 1287, 1302 (3d Cir.1996). Where the complaint and affidavits · are relied upon to satisfy its burden, the plaintiff succeeds by making a prima facie showing that jurisdiction exists. *See Friedman v. Israel Labour Party,* 957 F.Supp. 701, 706 (E.D.Pa.1997). "Factual discrepancies created by affidavits are generally resolved in favor of the non-moving party." *Id.; see also Carteret Savings Bank v. Shushan,* 954 F.2d 141, 142 n. 1 (3d Cir.1992).

All factual and legal issues must be addressed as jurisdictional issues, rather than on their merits. *See White v. United States Gov't Dep't of Treasury,* 969 F.Supp. 321, 323 (E.D.Pa.1997) (citing *Growth Horizons, Inc. v. Delaware County,* 983 F.2d 1277 (3d Cir.1993)). Under Rule 12(b)(1), dismissal is proper only if "the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or ... is wholly insubstantial and frivolous." *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.1991) (quoting *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946)).

## DISCUSSION

Plaintiff alleges that defendant is a citizen of North Carolina, the state in which it is located by organization certificate[4] and in which it maintains its principal place of business. *See* Amend. Compl. ¶ 2. Defendant counters that it is a citizen of each state in which it operates a branch bank, which would include Pennsylvania. *See* Defs. Mot. at 9. The argument turns on the meaning of the word "located" under 28 U.S.C. § 1348 (1994), which provides that national banks are "deemed citizens of

the States in which they are respectively located." *See id.*

## I. DIVERSITY OF CITIZENSHIP MUST BE COMPLETE.

■ "[F]ederal courts are courts of limited jurisdiction." *See Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Federal courts have "diversity" jurisdiction over cases and controversies between citizens of different states for a necessary amount in controversy. *See* 28 U.S.C. § 1332(a)(1); *Brown v. Francis,* 75 F.3d 860, 865 (3d Cir.1996). The rule means that no plaintiff may be a citizen of the same state as any defendant. *See Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 267, 2 L.Ed. 435 (1806), *overruled on other grounds by, Louisville, Cincinnati & Charleston R.R. Co. v. Letson,* 43 U.S. 497, 555–56, 2 How. 497, 11 L.Ed. 353 (1844) (regarding corporate citizenship); *Mennen Co. v. Atlantic Mut. Ins. Co.,* 147 F.3d 287, 290 (3d Cir.1998). Thus, diversity jurisdiction does not exist if plaintiff and defendant each are citizens of Pennsylvania. *See Mennen,* 147 F.3d at 290; *Kelly v. United States Steel Corp.,* 284 F.2d 850, 854 (3d Cir.1960).

### A. Citizenship of Plaintiff and State Corporations.

■ Ordinarily, corporate citizenship is defined by 28 U.S.C. § 1332, which makes corporations citizens of states in which they are incorporated and also of the state in which they maintain their principal place of business. *See* § 1332(c)(1). Plaintiff is incorporated in Pennsylvania and maintains its principal place of business in Pennsylvania. *See* Amend. Compl. ¶ 1. Consequently, plaintiff is a Pennsylvania citizen.

---

4. A national bank must file an organization certificate which includes a statement of where it will conduct operations of discount and deposit. *See* 12 U.S.C. § 22 (1994 & Supp.1999)

## B. Citizenship of Defendant and National Banks.

The citizenship of a national bank is addressed specially in 28 U.S.C. § 348, which provides that national banks are "citizens of the States in which they are respectively located." *See* 28 U.S.C. § 1348 (1994). A national bank has no state of incorporation. *See Berkowitz v. Midlantic Corp.*, No. 90–CV–1811, 1997 WL 452206, *4 (D.N.J. July 18, 1997). Rather, a national bank is incorporated by the federal government. *See* 12 U.S.C. § 24 (1994 & Supp.1999). To incorporate, a national bank must file an organization certificate stating, among other things, the place where the bank's "operations of deposit and discount are to be carried on." *See* 12 U.S.C. §§ 22 & 24 (1994). Once so incorporated, a national bank may now establish both intra-state and interstate branches, subject to limitation. *See* 12 U.S.C. § 36 (1994 & Supp.1999).

At the time of suit, defendant had branches in Pennsylvania. *See* Defs. Ans. ¶ 7; Nagel Aff. ¶ 3. Based on the following analysis, I conclude that those branches do not make defendant a citizen of Pennsylvania.

## II. UNDER § 1348, A NATIONAL BANKING ASSOCIATION IS A CITIZEN OF THE STATE OF ITS PRINCIPAL PLACE OF BUSINESS.

 Resolution of defendant's motion requires construction of statutory law. Jurisdiction in suits by or against a national bank is provided in § 1348 as follows:

The district courts shall have original jurisdiction of any civil action commenced by the United States, or by direction of any officer thereof, against any national banking association, any civil action to wind up the affairs of any such association, and any action by a banking association established in the district for which the court is held, under chapter 2 of Title 12, to enjoin the Comptroller of the Currency, or any receiver acting under his direction, as provided by such chapter.

*All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located.*

28 U.S.C. § 1348 (emphasis added).

This matter concerns the second paragraph because the issue here is in which state or states a national bank is located.

## A. Statutory Construction in Light of the History and Purpose of § 1348.

In construing a congressional enactment, I look first to the plain meaning of the text. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997); *Nelson v. American Dredging Co.*, 143 F.3d 789, 797 & n. 3 (3d Cir.1998). The word "located" is not a term of art in the law. *See* John B. Oakley, *Prospectus for the American Law Institute's Federal Judicial Code Revision Project*, 31 U.C. Davis L.Rev. 855, 913 (1998) [hereafter "Oakley"] (noting "no obvious analog elsewhere in the law determinative of citizenship for diversity purposes"). Indeed, when reviewing a former venue provision applicable in actions involving national banks, the Supreme Court noted an absence of "enduring rigidity about the word 'located.' " *See Citizens & S. Nat'l Bank v. Bougas*, 434 U.S. 35, 44, 98 S.Ct. 88, 54 L.Ed.2d 218 (1977).

In the context of federal jurisdiction, "located" was long understood to mean "principal place of business." *See, e.g., American Surety Co. v. Bank of Calif.*, 44 F.Supp. 81, 83 (D.Or.1941), *aff'd*, 133 F.2d 160, 162 (9th Cir.1943); Oakley, at 913 n. 247. Nonetheless, recent district court cases have held that a national bank is "located" in every state in which it maintains a branch.[5] Neither conclusion is per se unreasonable.

---

5. *See, e.g., Jenkins v. First Tenn. Nat'l Bank,* No. 2:98CV133–B–B, 1999 U.S. Dist. Lexis

A word subject to two reasonable interpretations is ambiguous. *See Taylor v. Continental Group Change in Control Severance Pay Plan,* 933 F.2d 1227, 1232 (3d Cir.1991). The construction of an ambiguous statutory term should be informed by the history and purpose of the legislation. *See Adams Fruit Co. v. Barrett,* 494 U.S. 638, 642, 110 S.Ct. 1384, 108 L.Ed.2d 585 (1990), *overruled on other grounds as stated in, Deck v. Peter Romein's Sons,* 109 F.3d 383, 388 (7th Cir.1997); *Director, Off. of Workers' Comp. Programs v. Sun Ship, Inc.,* 150 F.3d 288, 291 (3d Cir.1998). I will consider the history and purpose of § 1348.

**B. History and Supreme Court Construction of § 1348.**

For the last one-hundred years, the Supreme Court has explained that the jurisdictional statute was constructed to extend jurisdiction to national banks on like terms as to state banks and corporations. Although not precisely considering the definition of "located," these decisions stand as

3760, at *3 n. 3 (N.D.Miss. Mar. 25, 1999); *Ferraiolo Constr., Inc. v. Keybank, N.A.,* 978 F.Supp. 23, 25 (D.Me.1997); *Norwest Bank Minn., N.A. v. Patton,* 924 F.Supp. 114, 115 (D.Colo.1996); *Bank of New York v. Bank of Amer.,* 861 F.Supp. 225, 231 (S.D.N.Y.1994); *Connecticut Nat'l Bank v. Iacono,* 785 F.Supp. 30, 34 (D.R.I.1992).

6. The Act of 1863 did not confer jurisdiction or venue in state court. That venue provision stated only the following:

> Sec. 59 ... And be it further enacted, That suits, actions, and proceedings by and against any association under this act may be had in any circuit, district, or territorial court of the United States held within the district in which such association may be established.

Act of 1863, ch. 58, § 59, 12 Stat. 665, 681.

The Act of 1864 amended its predecessor by granting state court jurisdiction and delineating state court venue. The venue section provided:

> Sec. 57.... That suits, actions, and proceedings, against any association under this act, may be had in any circuit, district, or territorial court of the United States held

authoritative construction of an act of Congress. A brief discussion follows.

Section 1348 is the current incarnation of a provision that originated in the National Bank Act of 1863, as amended in 1864:

> Sec. 8.... Such association ... may make contracts, sue and be sued, complain and defend, in any court of law and equity as fully as natural persons.

Act of June 3, 1864, ch. 106, § 8, 13 Stat. 99, 101, *amending* Act of Feb. 25, 1863, ch. 58, § 11, 12 Stat 665, 668.[6]

Courts construed the early jurisdictional grant to mean that suits by or against national banks arose under federal law, thus providing automatic federal question jurisdiction. *See Leather Manufacturers' Nat. Bank v. Cooper,* 120 U.S. 778, 780, 7 S.Ct. 777, 30 L.Ed. 816 (1887). In 1882, however, the jurisdictional provision was amended in substance, as follows:

> Provided, however, *That the jurisdiction for suits hereafter brought by or against any association established under any law providing for national-banking as-* within the district in which such association may be established; or in any state, county, or municipal court in the county or city in which said association is located, having jurisdiction in similar cases: Provided, however, that all proceedings to enjoin the comptroller under this act shall be had in a circuit, district, or territorial court of the United States, held in the district in which the association is located.

Act of June 3, 1864, ch. 106, § 57, 13 Stat. 99, 116–17.

In 1873, the Revised Statutes were consolidated and amended and the following provisions addressed federal court jurisdiction over national banks.

> Sec. 563. The district courts shall have jurisdiction as follows: ... Fifteenth. Of all suits by or against any association established under any law providing for national banking associations within the district for which the court is held.
> Sec. 629 The circuit courts shall have jurisdiction as follows: ... Tenth. Of all suits by or against any banking association established in the district for which the court is held, under any law providing for national banking associations.

1873 Rev. Stat. Ti. 13, §§ 563, 629.

sociations, except suits between them and the United States, or its officers and agents, *shall be the same as, and not other than, the jurisdiction for suits by or against banks not organized under any law of the United States which do or might do banking business where such national-banking associations may be doing business when such suits may be begun:* And all laws and parts of laws of the United States inconsistent with this proviso be, and the same are hereby, repealed.

Act of July 12, 1882, ch. 290, § 4, 22 Stat. 162, 163 (emphasis added).

The Supreme Court explained that the 1882 statute was intended only to eliminate automatic federal question jurisdiction over all cases involving national banks. *See Leather Manufacturers' Bank,* 120 U.S. at 780–81, 7 S.Ct. 777. In all other respects, the act "was evidently intended to put national banks on the same footing as the banks of the state where they were located for all the purposes of jurisdiction in the courts of the United States." *See id.* at 780, 7 S.Ct. 777. A national bank was to be "placed before the law . . . [as to jurisdiction] the same as a bank not organized under the laws of the United States." *See id.* at 781, 7 S.Ct. 777.

The language presently used in § 1348 was first introduced into the jurisdictional grant by an Act of 1888, which amended the former jurisdictional provision as follows:

Sec. 4. *That all national banking associations established under the laws of the United States shall, for the purposes of all actions by or against them, real, personal, or mixed, and all suits in equity, be deemed citizens of the States in which they are respectively located; and in such cases the circuit and district courts shall not have jurisdiction other than such as they would have in cases between individual citizens of the same state.*

The provisions of this section shall not be held to affect the jurisdiction of the courts of the United States in cases commenced by the United States or by direction of any officer thereof, or cases winding up the affairs of any such bank.

Act of Aug. 13, 1888, ch. 866, § 4, 25 Stat. 433, 436 (emphasis added).

Although the 1888 act changed the structure of the 1882 act, it did not change the purpose. Rather, it made clear "that the Federal courts should not have jurisdiction by reason of the subject matter other than they would have in cases between individual citizens of the same state, and so not have jurisdiction because of the federal origin of the bank." *See Petri v. Commercial Nat'l Bank of Chicago,* 142 U.S. 644, 651, 12 S.Ct. 325, 35 L.Ed. 1144 (1892). The Court saw no reason to hold that Congress intended to restrict jurisdiction over national banks any more than for state corporations and individual citizens. *See id.* at 650–51, 12 S.Ct. 325.

In the Judicial Code of 1911, Congress changed again the structure of the provision but retained the language regarding citizenship.[7] The change was not construed to effect any fundamental change in law, *see Herrmann v. Edwards,* 238 U.S. 107, 118, 35 S.Ct. 839, 59 L.Ed. 1224 (1915), but rather was "obviously to make

---

7. The Judicial Code of 1911 granted jurisdiction as follows:

Sixteenth. Of all cases commenced by the United States, or by direction of any officer thereof, against any national banking association, and cases of winding up the affairs of any such bank; and of all suits brought by any banking association established in the district for which the court is held, under the provisions of title 'National Banks,' Revised Statutes, to enjoin the Comptroller of the Currency, or any receiver acting under his direction, as provided by said title. *And all National banking associations established under the laws of the United States shall, for the purposes of all other actions by or against them, real, personal, or mixed, and all suits in equity, be deemed citizens of the states in which they are respectively located.*

*See* Act of Mar. 3, 1911, ch. 231, § 24, para. 16, 36 Stat. 1091, 1092–93 (emphasis added).

the purpose of the reenacted statute clearer." *See id.* at 117, 35 S.Ct. 839; *see also* Act of Mar. 3, 1911, ch. 231, § 294, 36 Stat. 1167 (stating generally that recodification was not intended to change substance of prior law unless manifest).

Finally, in 1948 the Judicial Code was amended and § 1348 was enacted in its present form.[8] The Supreme Court subsequently explained that § 1348 and its predecessors "sought to limit, with exceptions, the access of national banks to, and their suability in, the federal courts to the same extent to which non-national banks are so limited." *See Mercantile Nat'l Bank v. Langdeau,* 371 U.S. 555, 565–66, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963) (rejecting argument that § 1348 limited venue over national banks). For the last century, the law as understood by the Supreme Court has been to extend federal jurisdiction to suits by or against national banks in like fashion as to state banks.

### C. National Bank Branches and Competitive Equality.

Several times this century, Congress amended the banking laws to make national banks competitive with state banks. The McFadden Act of 1927 permitted national banks to establish branches within a city on the same terms as state banks were permitted. *See* Stacey Stritzel, Comment, *The Riegle Neal Interstate Banking and Branching Efficiency Act of 1994: Progress Toward a New Era in Financial Services Regulation,* 49 Syracuse L.Rev. 161, 168 (1995) [hereafter "Stritzel"]; Comment, *Circumventing the McFadden Act: The Comptroller of the Currency's Efforts to Broaden the Branching Capabilities of National Banks,* 72 Ky. L.J. 707, 712 (1984). The Banking Act of 1933 permitted intrastate banking on the same terms as state banks were permitted. *See* Stritzel at 169.

In analyzing the branching provisions of the national banking laws, *see* 12 U.S.C.

§ 36, the Supreme Court has recognized the congressional goal of "competitive equality" between state and national banks. *See, e.g., First National Bank of Logan, Utah v. Walker Bank & Trust Co.,* 385 U.S. 252, 261, 87 S.Ct. 492, 17 L.Ed.2d 343 (1966); *First Nat. Bank in Plant City v. Dickinson,* 396 U.S. 122, 133, 90 S.Ct. 337, 24 L.Ed.2d 312 (1969) (noting policy of competitive equality is "firmly embedded in statutes governing the national banking system").

In the recent past, states liberalized restrictions on branching by permitting interstate branches. As a result, national banks did not remain competitive. *See* H.R.Rep. No. 103–448 at 20–21 (1994), *reprinted in* 1994 U.S.C.C.A.N 2044 [hereafter "H.R. Rep."]; Stritzel at 171–72. In 1994, Congress responded by permitting national banks to establish branch banks on the same terms that state banks were permitted to do so. *See* H.R. Rep. at 17–18, 21–24, *reprinted in* 1994 U.S.C.C.A.N. at 2040–42, 2044–47; Stritzel at 173. Moreover, Congress intended the reform to compel states to treat interstate banks and their branches in like fashion as they treated interstate corporations. *See* H.R. Rep. at 21–22, *reprinted in* 1994 U.S.C.C.A.N. at 2044–45; 12 U.S.C. § 36(c); Stritzel at 182–83. The consequence is that a national bank might now organize in a home state and maintain a branch in a host state without having to organize in the host state. *See* H.R. Rep. at 31, 59, 60, *reprinted in* 1994 U.S.C.C.A.N. at 2054–55, 2058–60; Stritzel at 197–98. Thus, Congress continues to seek competitive equality between state and national banks.

### D. The Longstanding Rule Was That A National Bank Was Located Where it Maintained Its Principal Place of Business.

At the time of its first use in 1882, the word "located" could not have included

---

**8.** The Reviser's Note explains that the present "section is based on Act Mar. 3, 1911, ch. 231, § 24, para. 16" and explains the changes effected: The language of "civil actions" replaced that of "cases." *See* Reviser's Note to 28 U.S.C.A. § 1348 (1993).

interstate branches of national banks: banks were strictly confined to a locality within a state. *See Bougas,* 434 U.S. at 43–44, 98 S.Ct. 88; Stritzel at 166–67. Thus, it is untenable to conclude that the original meaning of the statute contemplated state citizenship in other than the state in which a bank maintained its principal place of business. *Compare Bougas* at 43–44, 98 S.Ct. 88; Stritzel at 167 & n. 37.

For years, courts looked to a national bank's principal place of business to determine whether it was located in a state. Some courts explicitly limited a national bank's location to only its principal place of business. *See Berkowitz v. Midlantic Corp.,* No. 90–CV–1811, 1997 WL 452206, *4 (D.N.J. July 18, 1997) (holding that a national bank has no state of incorporation and is a citizen only of the state of its principal place of business); *American Surety Co. v. Bank of Cal.,* 44 F.Supp. 81, 83 (D.Or.1941) (analyzing purpose of statute and concluding that despite interstate branches, a national bank is a citizen of the state in which it has its principal place of business), *aff'd,* 133 F.2d 160 (9th Cir. 1943); *Country Nat'l Bank v. Mayer,* 788 F.Supp. 1136, 1142 n. 8 (E.D.Cal.1992). Other courts assumed that "located" meant "principal place of business." *See* Oakley, 31 U.C. Davis L.Rev. at 1034 n. 244. *See, e.g., Midlantic Nat'l Bank v. Hansen,* 48 F.3d 693, 694 (3d Cir.1995) (finding diversity without inquiry into branch locations); *Bankers Trust Co. v. Manufacturers Nat'l Bank of Detroit,* 139 F.R.D. 302, 305 (S.D.N.Y.1991) (finding diversity without inquiry into branch location); *Swift v. Fourth Nat'l Bank of Columbus,* 205 F.Supp. 563, 565 (M.D.Ga. 1962) (finding no diversity where bank principal place of business in same state as plaintiff). In fact, prior to 1992, I find no case suggesting otherwise. *See* Oakley, at 1034 n. 244 (characterizing newer decisions as a break from prior law).

The rule of those decisions was consistent with the Supreme Court observation that federal jurisdiction was to be available to national banks on like terms as it was to state banks. Lower federal courts explicitly adopted the analysis. *See Burns v. American Nat'l Bank & Trust Co.,* 479 F.2d 26, 28 (8th Cir.1973); *Williams v. American Fletcher Nat'l Bank & Trust Co.,* 348 F.Supp. 963, 965 (S.D.Ind.1970). A Third Circuit panel, in dicta, observed that originally national banks were not amenable to suit in state court and that it would be anomalous if state banks had greater access to federal court than national banks. *See Tradewinds v. Citibank, N.A.,* No. 81–1424, 1981 U.S.App. Lexis 11046, at *15 (3d Cir. July 15, 1981).

It has been Congress' purpose to ensure "competitive equality" of national banks with state banks. That policy has long informed Supreme Court interpretation of the grant of jurisdiction over national banks. Lower federal courts long have understood that a national bank was a citizen of the state in which it maintained its principal place of business. In light of these rules, and the sensibility behind them, I conclude that a national banking association is a citizen only of the state in which it maintains its principal place of business.

## III. CITIZENSHIP BY BRANCH BANK LOCATION.

In the last eight years, a number of federal district courts have held that a national bank is a citizen of every state in which it maintains branches or a substantial presence. *See supra,* note 5. *But see Berkowitz v. Midlantic Corp.,* 1997 WL 452206, *4 (holding that a national bank is a citizen only of the state of its principal place of business). This movement is attributable to a decision of the District Court for the District of Rhode Island. That decision was dependent, in turn, on a Supreme Court decision construing a now-repealed venue provision. The two will be explained briefly. I will then address the arguments on which other district courts have relied.

## A. The Supreme Court Held that "Located" in a Venue Provision Included Branch Locations.

In 1977, in *Citizens & S. Nat'l Bank v. Bougas,* the Supreme Court considered the question whether, in a suit against a national bank, venue in state court was proper only in the county in which it maintained its principal place of business or also in another county where the national bank maintained a branch. *See* 434 U.S. 35, 35, 98 S.Ct. 88, 54 L.Ed.2d 218 (1977). The Court noted first that the word "located" appeared in two other National Bank Act statutes. *See id.* at 35 n. 1, 98 S.Ct. 88 (citing the jurisdictional provision, § 1348, and a special venue provision governing actions to enjoin the Comptroller of the Currency, § 1394). The Court noted then that "located" had no unalterable meaning within the law of venue. *See id.* at 44, 98 S.Ct. 88; *see also id.* at 39–41, 98 S.Ct. 88 (explaining alternative interpretations). The Court did note that federal venue was proper where the national bank was "established," while state court venue depended upon where the national bank was "located." *See id.* at 44, 98 S.Ct. 88. Without endorsing a precise difference, the Court said that it was obligated to construe the words differently if possible. *See id.* The Court then considered that congressional enactment of the venue provision was due to concerns about potential inconvenience and unfairness in having a national bank litigate in a distant forum. *See id.* at 44 & n. 10, 98 S.Ct. 88. In light of modern developments in communication and transportation, the Court held that it would be consistent with the congressional purpose to subject national banks to venue in locations where they maintained branches. *See id.* at 44, 98 S.Ct. 88.

Five years later, Congress amended the venue provision to provide venue in suits by or against national banks under the general provisions of § 1391, unless against the Comptroller of the Currency. *See* Depository Inst. Act of 1982, Pub.L. 97–320, *reprinted in* 1982 U.S.C.C.A.N.

3054, 3082, 96 Stat. 1469. National banks now have federal venue like any other corporation.

## B. The Rhode Island District Court Read "Located" in § 1348 Based on The Supreme Court Interpretation of "Located" in Former Venue § 94.

In 1992, the District Court for the District of Rhode Island confronted the question whether a national bank was a citizen of each state in which it maintained a branch. *See Connecticut Nat'l Bank v. Iacono,* 785 F.Supp. 30, 31 (D.R.I.1992). The court acknowledged the prior rule that a national bank was a citizen of the state in which it maintained its principal place of business. *See id.* at 31–32. Nonetheless, the court declined to follow this precedent and held that a national bank was a citizen of every state in which it maintained a branch. *See id.* at 34.

The court relied heavily upon the Supreme Court decision in *Bougas.* First, the *Iacono* court noted that the Supreme Court had defined "located" with the understanding that the same word was used in two other provisions of the National Bank Act. *See id.* at 33. The court reasoned that the Supreme Court interpretation probably would be determinative in those other statutes as well. *See id.* Second, the court noted that § 1348 provided jurisdiction in different cases depending on where the national bank was "established" as opposed to "located." *See id.* The court sought to recognize the distinction between the two terms. *See id.* Third, the court determined that congressional amendment of the venue statute demonstrated that Congress knew how to supplant a judicial understanding of "located." *See id.* The court determined that the congressional decision not to amend the jurisdictional statute revealed its acceptance of the Supreme Court's construction of "located" as including states in which branch banks were maintained. *See id.* Finally, the court observed that there is a

preference for limiting diversity jurisdiction generally, and that a broader reading of citizenship therefore ought to be preferred. *See id.* at 33–34. In a similar vein, subsequent decisions have adopted the foregoing analysis [9] and, in addition, have argued that the original purpose of § 1348 was to restrict federal court jurisdiction, by eliminating automatic federal question jurisdiction. *See Bank of N.Y. v. Bank of Amer.*, 861 F.Supp. 225, 231 & n. 9 (S.D.N.Y.1994).

Respectfully, I disagree and will treat the arguments in turn.

### 1. The difference between "located" and "established" is not dispositive.

In *Bougas,* the Supreme Court assumed without holding that "established" meant the place of a national bank's charter. *See Bougas,* 434 U.S. at 39, 44, 98 S.Ct. 88. It held that "located" included places where branch banks were maintained. *See id.* The *Iacono* court analyzed § 1348 similarly and found that "established" and "located" are used in § 1348, and sought to discern a difference. I disagree.

An unpublished but thoughtful opinion by a Third Circuit panel suggested that the *Bougas* Court distinguished between "located" and "established" only to limit the issues before the Court. *See Tradewinds v. Citibank N.A.*, 1981 U.S.App. Lexis 11046, at *8. The panel found the distinction was not dispositive in construing the meaning of either word for purposes of federal court venue. *See id.* at **14–15. The panel suggested that the distinction was false when analyzed with respect to the venue rules and policy. *See id.* at *15. The opinion persuasively disposes of a hypothetical distinction: The Supreme Court did not define "estab-

lished" and so could not hold that "located" had a different meaning. Where not sensible, no distinction need be drawn.

Second, the words "established" and "located" in § 1348 date back to the act of 1882, at which time they were functionally synonymous because national banks had no branches. *See Bougas,* 434 U.S. at 42–43, 98 S.Ct. 88. The meaning of the words should reflect the doctrine they effect. In the former venue provision, the words were considered in light of the convenience of the parties. *See id.* at 44 & n. 10, 98 S.Ct. 88. In the context of diversity jurisdiction, the words should reflect the congressional goal of jurisdictional parity with state banks and corporations. *See supra,* Part II.B. That goal is not furthered by limiting federal jurisdiction as to national banks where state banks under similar conditions would have access to the federal courts on the basis of diversity jurisdiction.

Third, the suggested distinction is troublesome as to venue and jurisdiction in suits by a national bank to enjoin the Comptroller of the Currency. Under § 1348, district courts have original jurisdiction over *"any action by a banking association established in the district for which the court is held,* under chapter 2 of Title 12, to enjoin the Comptroller of the Currency...." *See* 28 U.S.C. § 1348 (emphasis added). Under § 1394, venue over *"any civil action by a national banking association to enjoin the Comptroller of the Currency"* is proper "in the judicial district where such association is located." *See* 28 U.S.C. § 1394 (emphasis added). If the words must be different, then there must be venue where no jurisdiction exists. I am reluctant to conclude that Congress provided particular jurisdiction in a more

---

9. As *Iacono* was the first decision to suggest that national banks were citizens of every state in which they maintain branches, it has been relied on by most subsequent decisions affirming that proposition. *See, e.g., Ferraiolo Constr., Inc. v. Keybank, N.A.,* 978 F.Supp. 23, 25 (D.Me.1997) (identifying *Iacono* as the

"leading case"); *Norwest Bank Minn., N.A. v. Patton,* 924 F.Supp. 114, 115 (D.Colo.1996); *Bank of New York v. Bank of Amer.,* 861 F.Supp. 225, 231 (S.D.N.Y.1994) (stating that court was persuaded "that *Iacono* was correct").

limited fashion than it provided particular venue.

Finally, if "located" and "established" must have different meanings for purposes of jurisdiction, I note that it was long the rule in federal courts that "established" meant the place of charter and "located" meant the principal place of business. *See Bougas,* 434 U.S. at 39, 98 S.Ct. 88. That reading follows more closely the jurisdictional prerequisites for state banks than making national banks citizens of each state in which they maintain a branch.[10]

## 2. The Supreme Court did not intend to define "located" for all statutes.

The *Iacono* court held that the Supreme Court footnote stating that "located" was used in the jurisdictional provision and in a special venue provision suggested that its interpretation would be relevant to all three statutes. *See Iacono,* 785 F.Supp. at 33. I do not read *Bougas* so broadly.

First, the Court explicitly limited its inquiry to where a national bank "is 'located,' *within the meaning of § 94, for purposes of a transitory action brought in a state court,* when it conducts banking business at an authorized branch outside its charter county?" *Bougas,* 434 U.S. at 37–38, 98 S.Ct. 88 (emphasis added). *See also id.* at 35, 98 S.Ct. 88 (presenting issue of state-court venue); *id.* at 44 n. 10, 98 S.Ct. 88 (explaining interpretation of § 94 venue). In fact, the Court repeatedly declined to speak to arguably relevant and conflicting portions of the venue statute. For example, the Court recognized potential inconsistencies between its holding and the provision for federal venue, but was "not concerned" with the "federal aspect of venue" and had "no occasion" to consider that part of the statute. *See Bougas,* 434 U.S. at 39, 98 S.Ct. 88; *see also id.* 44 n. 9, 98

S.Ct. 88 (declining to speak to federal venue despite logical tension). The Court spoke to nothing more than state court venue in a suit against a national bank. *See id.* at 40 n. 6, 98 S.Ct. 88. A broader reading is not supported by the case and was discouraged by the Court.

Second, after acknowledging that "located" is without fixed meaning in the law, *see Bougas,* 434 U.S. at 44, 98 S.Ct. 88, the Supreme Court defined "located" with respect to the history and purpose of the venue provision. *See Bougas,* 434 U.S. at 41–44 & n. 10, 98 S.Ct. 88. Similar analysis of "located" in § 1348 would consider the history and purpose of the jurisdictional grant. That analysis demonstrates that federal jurisdiction was to be available to national banks on like terms as it is available to state banks, corporations, and individual citizens. It does not favor limiting jurisdiction.

Finally, to hold that the Supreme Court suggested a conclusive definition of "located" in the provisions cited in the footnotes would create an anomalous result in suits to enjoin the Comptroller of the Currency. In 1977, jurisdiction under § 1348 was tied to the district in which the national bank was "established," although venue under § 1394 was proper where a national bank was "located." *Compare* 28 U.S.C. § 1348 (1977), *with* 28 U.S.C. § 1394 (1977). The same language and tension remain today. I am reluctant to hold that Congress provided specifically for limited federal court jurisdiction and then provided specifically for broader federal court venue in the same actions.

## 3. Absence of congressional amendment does not demonstrate that Congress accepted the Court's interpretation of "located."

Five years after *Bougas,* Congress amended the National Bank Act, including

10. At present, these are the same. This is because the principal place of business is specified in the organization certificate, which is analogous to state articles of incorporation. *See* 12 U.S.C. §§ 22 & 24. Consequently, the principal place of business usual-

ly will be the same as the place of charter. This is, however, no different from the impact of diversity rules on other corporations, such as plaintiff, which have principal places of business in the state in which they are incorporated.

the venue provision. *See* Act of Oct. 15, 1982, P.L. 97–320, Title 4, Part A, § 406, 96 Stat. 1469, 1512. Although a specific venue provision was retained for actions to enjoin the Comptroller, all other venue questions were to be controlled by the general venue provisions of § 1391. *See* S.Rep. at 28, *reprinted in* at 1982 U.S.C.C.A.N. at 3082. The *Iacono* court decided that because Congress knew how to replace the "located" language, and failed to amend the jurisdictional provision, it must have been comfortable with the definition of "located" as including branches. *See Iacono,* 785 F.Supp. at 33. I find that this conclusion conflicts with congressional purpose.

First, the purpose of much of the 1982 amendment was to make national banks more competitive with state banks. *See* S.Rep. at 25–28, *reprinted in* 1982 U.S.C.C.A.N. at 3079–3082. Therefore, I am reluctant to conclude that national banks have more limited access to federal court than state banks.

Second, Congress amended the venue provision so that plaintiffs suing national banks would have choice of a venue on like terms as they would against all other corporations. *See* S.Rep. at 28, *reprinted in* 1982 U.S.C.C.A.N. at 3082. Therefore, I hesitate to conclude that Congress intended to deprive plaintiffs of a choice of forum in suits against national banks that they would have in suits against state banks.

Third, no case until 1992 suggested that a national bank was a citizen of every state in which it maintained a branch. When Congress amended the venue provision in 1982, there was little reason to change language where the courts had given it no cause to do so.

### 4. Neither the purpose of § 1348 nor the modern trend to limit diversity jurisdiction supports expanding national bank citizenship.

The *Iacono* court suggested that limiting diversity jurisdiction is consistent with the goal of reducing the burden on federal courts. *See Iacono,* 785 F.Supp. at 33–34. Subsequent courts have suggested also that the original purpose of § 1348 was to limit generally federal jurisdiction. *See Bank of New York,* 861 F.Supp. at 231 & n. 9.

First, there are more direct ways to limit diversity jurisdiction, such as simply rescinding it as to national banks. Congress has not done that. Rather, as the Supreme Court has noted over the last hundred years, Congress has extended federal jurisdiction to national banks in the same manner as to state banks, corporations, and individuals. *See supra,* Part II.B.

Second, many federal corporations are not amenable to diversity jurisdiction at all. *See Little League Baseball v. Welsh Publishing Group,* 874 F.Supp. 648, 651 (M.D.Pa.1995). To the extent that Congress knows how to make some federal corporations unavailable for diversity purposes, it never chose to do so as to national banks. In 1882, it chose to do just the opposite. The Third Circuit has noted that although automatic federal question jurisdiction was eliminated in suits by or against national banks, Congress in 1882 sought to make "certain that diversity jurisdiction remained possible." *See Feuchtwanger Corp. v. Lake Hiawatha Fed. Credit Union,* 272 F.2d 453, 455 (3d Cir. 1959).

Third, in 1982, Congress sought to make national banks more widely amenable to suit in federal courts when it amended the venue provision. *See* S.Rep. at 28, *reprinted in* 1982 U.S.C.C.A.N. at 3082. It should not be understood by implication to have simultaneously overruled previous law which extended federal diversity jurisdiction over actions by or against national banks.

Fourth, Congress has long been concerned with making national banks competitive with state banks. Notably, recent congressional amendment to the National Bank Act indicates that Congress sought

to require that national banks and state banks be treated more analogously to other corporations, by providing for interstate merger and acquisition and by making national banks susceptible to state filing requirements, which are non-discriminatory between banks and other corporations. *See* H. Rep. at 17 21, *reprinted in* 1994 U.S.C.C.A.N. at 2041–4; Stritzel at 179–84. It would not further that end to limit national banks' access to federal court.

## CONCLUSION

I recognize that the meaning of the word "located" in § 1348 is ambiguous. Also, I recognize recent decisions construing the word to make a national bank a citizen of each state in which it maintains a branch. Nonetheless, I conclude that longstanding judicial precedent limited a national bank's "location" to its principal place of business for diversity purposes. Also, I conclude the purpose of the jurisdictional grant is to extend federal jurisdiction to suits by or against national banks in like fashion as it is available in suits by or against state banks. I conclude that a national bank, being a citizen of the state in which it is "located," for diversity purposes, is a citizen only of the state in which it maintains its principal place of business (or where it is "established"). Therefore, I hold that defendant is a citizen of North Carolina and not of Pennsylvania. Consequently, the parties are of diverse citizenship, and the defendant's motion to dismiss the action for lack of subject matter jurisdiction will be denied.